**Donald SUTHERLAND and Phyllis Brynjulson Sutherland, Husband and Wife**

v.

**AUCH INTER–BOROUGH TRANSIT COMPANY.**

**Civ. A. No. 70–1175.**

United States District Court,
E. D. Pennsylvania.

Nov. 8, 1973.

James E. Beasley, Beasley, Hewson, Casey, Kraft & Colleran, Philadelphia, Pa., for plaintiffs.

Carl S. Tannenbaum, Takiff, Bolger & Picker, Philadelphia, Pa., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

NEWCOMER, District Judge.

1. Plaintiffs Donald Sutherland and Phyllis Brynjulson Sutherland, husband and wife, were citizens of the State of New York residing at 126 Jamesville Avenue, Syracuse, New York at the time this action was filed.

2. Defendant Auch Inter-Borough Transit Company (hereafter Auch) is a corporation organized and existing under the laws of Pennsylvania with its princi-

pal place of business located at 1516 Fayette Street, Conshohocken, Pennsylvania.

3. The amount in controversy exceeds the sum of $10,000 exclusive of costs.

4. On May 11, 1968, plaintiff Phyllis Brynjulson Sutherland, hereafter plaintiff Sutherland) was riding in a bus owned by the defendant Auch and operated by William Neal, an Auch employee, within the scope of his employment.

5. On May 11, 1968, at approximately 5 p. m., the bus in which plaintiff Sutherland was riding was involved in an accident which accident developed through the following sequence of events:

(a) At about 5 p. m. the bus was proceeding south on Fayette Street in the Borough of Conshohocken.

(b) The street was wet at 5 p. m. because it had been and was raining prior to and at the time of the accident.

(c) After the bus had passed by 7th Avenue, the light at 6th Avenue changed from green to yellow for traffic proceeding south on Fayette Street.

(d) At the time of the light change, William Neal, the driver of the bus, applied the brakes in order to bring the bus to a stop at 6th Avenue.

(e) Upon application of the brakes, the bus skidded out of control, crossed the center line of Fayette Street between 7th and 6th Avenues, and crashed into two automobiles which were parked along the left hand curb facing north.

6. Plaintiff Sutherland was warned of the impending crash and attempted to brace herself by pressing her feet against a wheel hump cover which cover was beneath the bench seat in front of the seat in which she was sitting.

7. Upon impact, plaintiff Sutherland was forced into an extreme crouch position causing her knees to become locked.

8. On May 11, 1968, plaintiff Sutherland was taken to Bryn Mawr Hospital in a rescue vehicle where she complained of hip and leg injuries.

9. On May 12, 1968, plaintiff Sutherland again was taken to Bryn Mawr Hospital where her right hip and leg were x-rayed.

10. On May 12, 1968, plaintiff Sutherland performed certain pieces from the work *Carmina Burana* in a concert at Agnes Irwin School from a wheelchair.

11. Defendant Auch, through its agent, William Neal, owed a duty to plaintiff Sutherland to keep the bus in which she was riding as a passenger under proper control and to exercise the highest degree of care to make her journey safe.

12. The failure of defendant Auch, through its agent, William Neal, to maintain proper control of the bus in which plaintiff was riding constituted a breach of a duty owed to plaintiff Sutherland.

13. The failure of defendant Auch, through its agent, William Neal, to exercise the highest degree of care possible to make plaintiff Sutherland's journey safe constituted a breach of a duty owed to plaintiff Sutherland.

14. The breaches of the above duties by defendant Auch were both substantial factors in bringing about the accident in question.

15. The right knee and right hip injuries were the proximate result of the May 11, 1968 accident.

## DISCUSSION RE LIABILITY

██ This is a diversity action and the substantive law of Pennsylvania is controlling. It appears clear that the defendant Auch through its agent, William Neal, was negligent in failing to keep the bus in which plaintiff was a passenger under proper control in view of the weather and road conditions prevailing on May 11, 1968. Under Pennsylvania law, a common carrier of passengers for hire owes "the highest degree of care as human judgment and foresight are capable of, to make a passenger's journey safe." Scott v. Eastern Air Lines, Inc., 399 F.2d 14 (3rd Cir. 1968). See also, Schulz v. Reading Transportation Company, 354 Pa. 373, 47 A.2d 213

(1946). Also, the defendant has failed to satisfactorily explain how the bus skidded from one side of the street to the other after the brakes were applied by the driver William Neal.

This accident was also the proximate result of defendant's negligence and both sides agree that plaintiff Sutherland was in no way contributorily negligent.

## FINDINGS OF FACT RE INJURIES AND MEDICAL TREATMENT

1. Subsequent to the accident the plaintiff was admitted to the emergency room at the Bryn Mawr Hospital at approximately 6:00 p. m. on May 11, 1968.

2. Upon admission to the emergency room at that time the plaintiff complained of trauma from right thigh injury, right hand injury and right shoulder injury and the doctor on examination could find "no definite tenderness" in the right hip and back and, in addition, x-rays of the right hip, pelvis and spine were negative.

3. Plaintiff was admitted to the emergency room of Bryn Mawr Hospital a second time on May 12, 1968, with complaints of trauma from back injury.

4. On the second admission to Bryn Mawr Hospital emergency room, x-rays of the lumbar spine were negative but examination by Dr. Snedden revealed a positive psoas test with diagnosis of synovitis of the right hip.

5. Neither the Bryn Mawr Hospital emergency room record of May 11, 1968, nor the record of May 12, 1968, indicates any complaints of pain in the right knee or diagnosis of an injury to the right knee.

6. On May 13, 1968, the plaintiff was examined and treated by David G. Murray, M. D., in Syracuse, New York.

7. Dr. Murray's examination of plaintiff on May 13, 1968, as reported in his office summary for May 13, 1968, indicated that the plaintiff's right hip "can be put through essentially a full range of motion without crepitation or discomfort as long as muscles are not tightened."

8. Dr. Murray's diagnosis as noted in his office summary for May 13, 1968, was "generalized acute strain right leg."

9. Plaintiff continued to be treated intermittently by Dr. Murray until October 14, 1969, when Dr. Murray's examination as noted in his report of October 29, 1969, revealed "a full range of motion with no growth deformity and x-rays of her knees taken on October 14, 1969, were within normal limits."

10. Plaintiff's next visit to Dr. Murray was a follow-up examination on April 16, 1970.

11. Dr. Murray's diagnosis as contained in his report of April 21, 1970, was "aggravation of mildly damaged muscular and tendinous tissue dating back to May 11, 1968."

12. Plaintiff's next visit to Dr. Murray was on November 10, 1970.

13. Dr. Murray's examination of November 10, 1970, as noted in his office summary for November 10, 1970, revealed "tenderness over the trochantery bersa and x-rays are negative."

14. Dr. Murray's diagnosis as noted in his report of November 13, 1970, was "post-traumatic trochanteric bursitis."

15. Plaintiff was examined on behalf of the defendant by Richard K. Vosburgh, M. D., on March 27, 1970.

16. At that time plaintiff reported to Dr. Vosburgh that her right hip complaint was better.

17. Plaintiff's complaints to Dr. Vosburgh were limited to swelling of both knees after prolonged standing with the swelling subsiding overnight.

18. Dr. Vosburgh's examination revealed (1) no impairment of gait, i. e., no limp; (2) normal heel and toe stand; (3) no fluid in either knee; (4) no crepitus or clicking in either knee; (5) no thickening of the synovium in either knee; (6) negative McMurray tests for torn medial meniscus in either knee; (7) negative tests for torn ligaments in either knee; (8) complaint of pain on palpation over the outer surface of the right femur in its upper third; (9) no

atrophy of either thigh or leg; (10) no tenderness of the patella or knee cap of either knee or percussion; (11) both knees were equal in all regards; (12) plaintiff complained of pain on deep knee bend.

19. Dr. Vosburgh's examination of plaintiff was negative for any injury to the right hip or right knee.

20. Dr. Vosburgh's examination was positive for complaints of pain in the knees on deep knee bending only.

21. Dr. Vosburgh's examination was positive for complaints of pain of the hip on passive motion only.

22. Dr. Vosburgh's examination was positive for complaints of pain of the upper third of the right femur.

23. Dr. Vosburgh's diagnosis was that the plaintiff was recovered from any injuries to her right hip and right knee which may have been sustained in the accident of May 11, 1968.

24. Plaintiff came under the care of Jere Daum, M. D., on October 7, 1971.

25. Plaintiff did not call Dr. Daum to testify at the trial.

26. Plaintiff was examined on behalf of defendant by Martin L. Beller, M. D., on May 30, 1972.

27. Plaintiff told Dr. Beller that she receives cortisone shots in the right anterior-superior illiac spine.

28. Plaintiff told Dr. Beller that she has pain in the right anterior illiac crest area and sometimes in the right groin.

29. Dr. Beller's examination revealed (1) plaintiff's heel to toe gait was normal and she was able to rise on heels and toes; (2) no atrophy in any part of either leg including the thigh, knee, calf and ankle of both legs; (3) bending of both knees was normal; (4) hip movement in both hips normal; (5) external rotation of right hip in position of 90 degrees flexion causes complaint of pain in right anterior-superior illiac spine area and over the greater trochanter of the right femur; (6) tenderness over right greater trochanter; (7) tenderness

right anterior-superior spine; (8) gait and stance were normal without limp; (9) in prone position in extension, full rotation of both hips without spasm; (10) in prone position, tenderness greater trochanter right femur; (11) no swelling or thickening of either knee; (12) no fluid or synovial thickening in either knee; (13) all ligaments in both knees intact; (14) MacMurray test for torn medial meniscus negative for both knees; (15) no patella or femoral crepitus; (16) no usual instability of patella or femur on either side; (17) patella and patellar tendon intact on both sides; flexing of right hip and right knee causes complaint of pain in right anterior illiac spine of the trochanter of the right femur, (18) x-rays of lumbar spine, both hips and both knees, including the patella, negative.

30. Dr. Beller's diagnosis was that plaintiff had completely recovered from any injuries to the right knee or right hip sustained on May 11, 1968.

31. On July 19, 1973, plaintiff was examined by Raymond G. Tronzo, M. D.

32. Dr. Tronzo's examination revealed (1) plaintiff's gait was impaired but Dr. Tronzo was unable to tell whether it was due to the right knee which had been injured one week prior to the examination or to the right hip; (2) point tenderness over the right greater trochanter; (3) pain on internal rotation of the hip and internal rotation lost by about 15 degrees; (4) external rotation of right hip was full; abduction and adduction of right hip were full; (6) extension and flexion of right knee were full; (7) slight crepitus in right knee; (8) point tenderness on the inner side of the right knee; (9) positive MacMurray sign; (10) atrophy of the medial quadriceps muscle; (11) x-rays of both hips and both knees were negative for arthritis.

33. Dr. Tronzo's diagnosis was (1) tear of the medial meniscus of the right knee; (2) early chondromalacia of the right knee; (3) chronic synovitis of the right hip.

34. Plaintiff is conscious of a clicking in her right knee when she walks or moves it.

## DISCUSSION

It is difficult to pin down the exact nature of plaintiff's injuries in light of the testimony introduced by both sides. It appears that plaintiff did sustain some injury to her right knee and right hip as a result of the accident on May 11, 1968. Also, there are residual effects which still affect and will affect plaintiff for the rest of her life. The difficulty lies in assessing the degree of disability, if any, which remains and which will result in a loss of future earning capacity to plaintiff.

Plaintiff's main contention is that she has established by a preponderance of the evidence that she would have eventually joined the ranks of the world's greatest opera performers but for the injuries caused by the May 11, 1968 accident. Plaintiff specifically alleges that the injuries to her knee and hip make it unlikely that she will be able to do opera because she cannot move around the stage with any dramatic ability. Her movements are limited by the pain she experiences in her right knee and hip and by the fact that her right knee tends to swell up and become stiff if she remains in a standing position for a prolonged period of time. The pain also affects plaintiff's ability to concentrate on producing the best pitch and tone of which she is capable which consequently detracts from her overall performance. For these reasons plaintiff feels she cannot and will not be asked to do full dramatic operatic performances.

The initial question is whether or not plaintiff would have succeeded in becoming a recognized opera performer. We think that the evidence supports a finding that she would have succeeded in becoming a first rank performer and will evaluate her damages on that basis. The testimony from the individual music experts demonstrates that plaintiff possesses an exceptional soprano voice. Plaintiff also established that she has the ability to sing quarter tones with exceptional accuracy and that she may be the only soprano in the world now living who has the ability to produce quarter tones on a consistent basis. Plaintiff has further established that she would have been able to perform opera from age 35 to age 55 but for the accident.

The defendant vigorously contests the plaintiff's contention that she has established by a preponderance of the evidence that she eventually would have become an opera performer earning a minimum of $300,000.00 per year and directs our attention to Grayson v. Irvmar Realty Corp., 7 A.D.2d 436, 184 N.Y.S.2d 33 (1959) as supporting its argument. In that case, the Supreme Court, Appellate Division, reduced a jury verdict from $50,000 to $20,000 because the award was excessive. The facts of that case are much like the instant case. There, plaintiff, an operatic student injured her leg and sustained a substantial loss of hearing which impaired her ability to maintain pitch. The New York Court stressed the highly speculative nature of plaintiff's claim for future earnings impairment based on the fact that "except from her teachers, she had not achieved any spectacular or extraordinary recognition for her talents." [as an opera performer] 184 N.Y.S.2d at 37.

However, we view the case presently before us as different in one significant respect. Here we have a substantial amount of evidence from a number of recognized experts that this plaintiff would have succeeded in becoming a recognized first rank operatic performer. We think plaintiff's experts were eminently qualified to predict the success of plaintiff's future career as an opera performer, and we are of the opinion that plaintiff has established the likelihood of her success as a recognized opera performer by a preponderance of the evidence.

Having decided that plaintiff would have become a first rank opera performer at some time during her career, we must now determine what singing oppor-

tunities are available to the plaintiff in view of the nature of her injuries.

The question actually boils down to what limits are placed on plaintiff's ability to perform as a soprano as a result of the injuries she sustained on May 11, 1968. This is a particularly difficult question to answer in view of the unique career sought after by plaintiff. However, plaintiff's damages, if any, are not to be determined by the uniqueness of her career but rather by the evidence introduced which establishes the economic horizons which she has lost as a result of the accident.

■ The medical evidence introduced at trial tends to show that plaintiff's complaints are almost entirely related to the pain she experiences in her right knee and right hip. This pain has a direct effect on plaintiff's ability to concentrate, as she must, on producing certain notes while singing and it also affects her ability to produce certain movements required of a dramatic opera performer. Plaintiff is conscious of a "clicking sound" in her right knee when she moves it, and this distraction also affects plaintiff's concentration while performing. Finally, plaintiff's right knee swells and becomes stiff with prolonged use which limits her movement on stage as well as her ability to endure a lengthy performance.

However, the testimony tends to support the conclusion that plaintiff will be able to perform certain operas in her present condition if some staging modifications are made to accommodate her limitations. We are further impressed by the fact that plaintiff appears to be a strong individual with a great desire to achieve success in her chosen field despite the existence of her present limitations. This assumes, of course, that plaintiff will not undergo knee surgery or if she should decide to undergo surgery, that such surgery would not be successful. Plaintiff's physician and expert, Dr. Tronzo, testified that knee surgery probably would be successful.

Also, plaintiff is able to sing concert music with little limitation on her voice except that she may lose her concentration while attempting to reach very high notes because of the clicking in her knee or the pain she experiences. In 1972, plaintiff earned $1,000 per concert, and in 1973, she earned $1,500 per concert, and the prospects for her future as a concert singer are good. Plaintiff has also made several recordings of various works, and we feel will continue to do so in the future. Although plaintiff's recognition as a first rank soprano will be affected to some extent by the limits placed on her as a result of her injuries, we believe that she will achieve significant recognition as a first rank soprano despite those injuries. Therefore we are of the opinion that plaintiff's economic horizons have not been as severely diminished as plaintiff contends. We are of the opinion that the sum of $75,-000.00 represents reasonable and fair compensation for loss of future earning capacity reduced to present worth.

■ Other areas of damage for which plaintiff seeks recovery include past housekeeping and baby-sitting expenses, past loss of earnings, past and future pain and suffering and future medical expenses. We award the following amounts as reasonable compensation for the approximate categories of damage:

| | |
|---|---|
| (1) past housekeeping and baby-sitting | $ 56.00 |
| (2) past loss of earnings | 288.60 |
| (3) past and future pain and suffering | 5,000.00 |
| (4) future medical expenses | 2,000.00 |
| (5) Past Medical expenses | 788.02 |

■ Plaintiff Donald Sutherland has brought a separate action for loss of consortium. Defendant contends that plaintiff Donald Sutherland is not entitled to any recovery for loss of consortium because Mr. Sutherland married Mrs. Sutherland after the May 11, 1968 accident and directs our attention to Sartori v. Gradison Auto Bus Co., Inc., 42 Pa.D. & C. 781 (1967) as support for its contention. We are not bound to follow the holding in *Sartori*, see Commissioner of Internal Revenue v. Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), but even if we were bound by *Sartori's* holding, we find nothing in

that case which would be inconsistent with the allowances of a recovery for consortium here. The *Sartori* holding turned on the theory that a prospective husband takes his future bride as he finds her and should not be permitted to marry a cause of action. In *Sartori*, the plaintiff wife was injured on December 24, 1963 and the *Sartoris* were married on September 12, 1964, approximately nine months later. In our case, the accident occurred on May 11, 1968, and plaintiffs were married on June 7, 1968, less than a month later. Although the *Sartori* court did not expound on the time interval involved between accident and marriage, we are of the opinion that the Supreme Court of Pennsylvania would make some modification of the holding in that case where, at the time of the accident, plaintiffs were engaged to be married and the wedding date was less than a month away. However, plaintiff Donald Sutherland is only entitled to recover for loss of consortium from the date of his marriage and any hospital or medical bills which were incurred prior to the marriage are part of the $788.02 awarded to Mrs. Sutherland for past medical expenses and are not to be included in Mr. Sutherland's recovery. Also, the award for future medical expenses have been awarded to Mrs. Sutherland because as *Sartori* points out, if Mrs. Sutherland were single, she would be entitled to recover these damages in her own right. However, Donald Sutherland may recover for loss of past and future consortium from June 7, 1968 and into the future computed on Mrs. Sutherland's 49 year life expectancy. For the above reasons, we will award plaintiff Donald Sutherland the sum of $500.00 for loss of consortium exclusive of any medical or hospital bills which Mrs. Sutherland has incurred or may incur in the future as a result of the injuries which she sustained as a result of the May 11, 1968 accident.

Any statements of fact or law found in this Court's discussions regarding liability or damages which have not been specifically enumerated in the sections entitled "Findings of Fact" and "Conclusions of Law" respectively, are hereby designated "Supplemental Findings of Fact and Conclusions of Law."

CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. § 1332.

2. The accident on May 11, 1968 in which plaintiff Phyllis Brynjulson Sutherland was injured was a proximate result of the defendant Auch Inter-Borough Transit Company's negligence.

3. Plaintiff Phyllis Brynjulson Sutherland's knee and hip injuries were the proximate result of the accident of May 11, 1968, for which she may recover damages.

4. Plaintiff Phyllis Brynjulson Sutherland was not contributorily negligent.

5. Plaintiff Donald Sutherland is entitled to recover damages as plaintiff Phyllis Brynjulson Sutherland's husband for loss of past and future consortium as set forth in the court's discussion re damages above.