183 N.J. Super. 591 (1982)
444 A.2d 1141
RUTH NANCE CHILDERS AND MICHAEL CHILDERS, HER HUSBAND, PLAINTIFFS,
v.
JAMES J. SHANNON, SUE M. PARENT AND PARENT'S FLOWER & GIFT SHOP, ETC., DEFENDANTS.
Superior Court of New Jersey, Law Division, Cumberland County.
Decided March 5, 1982.
*592 J. Peter Davidow for defendants (Davidow & Davidow, attorneys).
Nicholas G. Radano for plaintiffs (Kavesh, Basile, Radano & Healey, attorneys).
MILLER, EDWARD S., J.S.C.
Defendants have moved for an order dismissing the second count of the complaint which demands damages for loss of consortium, on the ground that plaintiffs were not married at the time of the accident. The facts are not in dispute: Plaintiff Ruth Nance Childers seeks recovery for injuries she suffered in an auto accident which took place on June 2, 1978, about two months prior to her wedding to plaintiff Michael Childers. Plaintiffs argue in response to defendants' motion that the claim for loss of consortium is valid, at least from the date of their wedding if not from the date of the accident. Plaintiffs' argument, however, fails to justify overruling the law of this State.
Traditional notions of the relations between unmarried partners and of the relations between the partnership and society are currently being tested in the courts. Although many individuals have rejected marriage to avoid its burdens, some courts do not hesitate to impose upon some unmarried partners duties tantamount to marital obligations, Kozlowski v. Kozlowski, 80 N.J. 378 (1979); but see Crowe v. DeGioia, 179 N.J. Super. 36 (App.Div. 1981); Marvin v. Marvin, 18 Cal.3d 660, 134 Cal. Rptr. 815 (Sup. 1976), rev'd 122 Cal. App.3d 871, 176 Cal. Rptr. 555 *593 (D.Ct.App. 1981). It is therefore not surprising that unmarried partners, whether engaged to marry or cohabitant or both, regardless of sexual differentiation, have sought the legal benefits of marriage as well. The legal distinctions between married and unmarried couples have therefore become increasingly blurred. However, to overturn settled law and allow an unmarried partner to recover for loss of consortium would indicate that our society now virtually equates fiances and unmarried cohabitants with married couples. The distinctions between them are not yet quite so blurred.
The question whether a husband may recover damages for loss of consortium as a result of premarital injuries to his wife was answered in the negative 74 years ago in Mead v. Baum, 76 N.J.L. 337 (Sup. 1908). Defendants correctly argue that marriage at the time of injury has traditionally been a prerequisite of a claim for loss of consortium. Plaintiffs argue that the requirements of the claim have changed and point to federal decisions in which a cohabitant was allowed to maintain a claim for loss of consortium, Bulloch v. United States, 487 F. Supp. 1078 (D.C.N.J. 1980), and in which a husband actually recovered damages for loss of consortium resulting from premarital injuries to his wife, Sutherland v. Auch Inter-Borough Transit Company, 366 F. Supp. 127 (D.C.Pa. 1973).
In Auch the husband's recovery was based on the nearness in time of the accident to the wedding, 366 F. Supp. at 134. No rationale is offered to support the departure from the traditional elements of a loss of consortium claim.
In his decision in Bulloch Judge Ackerman stated that, in allowing plaintiff to maintain her consortium claim, the federal court attempted to predict a change in New Jersey law:
... a federal court must be sensitive to the doctrinal trends of the state whose law it applies, and the policies which inform the prior adjudications by the state court ... The federal tribunal is thus obligated to follow the course that it expects New Jersey courts would adopt in similar circumstances. 487 F. Supp. at 1082.
*594 Judge Ackerman had before him the decision in Kozlowski v. Kozlowski, supra, in which plaintiff was allowed to recover the reasonable value of her nonsexual services to defendant during the period of their cohabitation; he did not, of course, have the later opinion in Crowe v. DeGioia, supra, wherein a denial of recovery upon substantially similar facts limited the impact of Kozlowski. It appears that since the Kozlowski decision treated cohabitants as if they had been married with respect to their mutual obligations, Judge Ackerman assumed that New Jersey courts would treat cohabitants as if they were married with respect to third-party obligations to them also. The rationale of the Bulloch decision is that denial of recovery for loss of consortium to cohabitants is, in effect, a penalty for failure to marry, disapproved in Kozlowski.
The New Jersey Courts may determine that the purpose of tort law is to compensate the people whose injuries are proximately caused by tortious conduct and that concepts of reward and punishment related to a person's marital state are irrelevant to a consideration of who is entitled to compensation. [487 F. Supp. at 1084]
The flaw in Judge Ackerman's analysis is that the continued requirement of marriage as an element of a claim for loss of consortium is not a matter of reward or punishment. Rather, marriage is the only dependable means by which a relationship  of which consortium is an element  may be legally defined.
In New Jersey, entitlement to recovery for loss of consortium is based on the plaintiffs' interest in their relationship with one another, Elkalo v. Constructive Service Corp. of America, 46 N.J. 82 (1965). Consortium had previously been deemed a property interest of a husband in his wife, see Mead v. Baum, supra, 69 A. at 963, not recoverable by a wife for injuries to her husband. In order to allow a wife to assert a loss of consortium claim for injuries to her husband, the court in Elkalo set aside the property interest theory of recovery and substituted "basic principles of negligence and causation," pursuant to which a wife's loss for negligent injury to her husband is "as immediate *595 and direct as his would be if she had been the subject of the accident." 46 N.J. at 90.
In Elkalo plaintiffs were husband and wife. In the present case plaintiffs argue that their affianced status is a relationship sufficient for proof of loss, and they request that New Jersey courts abandon the legal parameters of marriage to conclude that a fiance and/or cohabitant whose partner has been injured may maintain a claim for loss of consortium.
Marriage, however, is the only legal touchstone by which the strength of a male-female relationship may be tested. It is not the function of this court to sift through the myriad relationships of a party in a negligence action to determine which of those near and dear have suffered an injury proximately caused by tortious conduct. Should this court allow this plaintiff's claim for loss of consortium, other courts will be forced to determine which plaintiffs have relationships sufficiently meaningful to entitle them to claim consortium. Plaintiffs here were engaged to be married at the time of the accident; how long an engagement will support a claim? One month? One week? "Going steady"? Or is cohabitation to be the test, as it apparently was in Bulloch? Again: For how long? Was there joint payment of rent? Grocery bills?
Presumably, when partners wish social and legal recognition of their relationship, they marry. To accord consortium to an unmarried plaintiff is to force upon him or her a status which he or she had not, at the time of the injury, asserted; it is an ill-conceived intrusion into the private lives of individuals.
This State is quite properly liberal in its desire to effect justice regardless of the constraints of formality. This court is unwilling to denigrate marriage to the status of a formality. To do so is to bastardize not only the children born of such unions but the very fabric of society. Only a Legislature responsible to the electorate should have such power.
Defendants' motion is granted.