Jean Thompson WEAVER, Plaintiff,

v.

G.D. SEARLE & CO., a corporation,
et al., Defendants.

Richard WEAVER, Plaintiff,

v.

G.D. SEARLE & CO., a corporation,
et al., Defendants.

Civ. A. Nos. 79–AR–0777–S,
79–AR–0778–S.

United States District Court,
N.D. Alabama, S.D.

March 17, 1983.

Jack Drake, Drake, Knowles & Pierce, Tuscaloosa, Ala., Alice M. Jacobs, New Orleans, La., for plaintiffs.

James J. Duffy, Jr., Dennis McKenna, Inge, Twitty, Duffy & Prince, Mobile, Ala., Randolph H. Lanier, T. Dwight Sloan, Balch, Bingham, Baker, Hawthorne, Williams & Ward, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

These two cases, brought by husband and wife, have been consolidated. Jean Thompson Weaver's complaint charges G.D. Searle & Co. with causing her personal injuries as a result of her use of an intrauterine device manufactured and marketed by Searle. Richard Weaver's complaint charges Searle with loss of consortium as a result of his wife's injuries. Searle, after discovering that the two plaintiffs were not married until after Jean's injury, has filed a motion for summary judgment in Richard's case, taking the position that a man cannot, by marrying, acquire a cause of action for loss of his wife's services. This issue has never been decided in Alabama, doubtless because such a cause of action has never been asserted before in Alabama. The question, simply put, is: "Does a spouse have a cause of action for loss of consortium when the underlying physical injury occurred before

the couple was married but after they were living together"?

The relevant facts are without dispute, making the issue ripe for consideration on motion for summary judgment. Jean started living with Richard in 1976. (Richard's deposition, p. 7). Jean had used a CU–7 IUD, starting in 1974 (Jean's deposition, p. 29). Her first IUD was expelled within 24 hours. (Jean's deposition, p. 32). Another IUD was inserted shortly thereafter. (Jean's deposition, p. 33). In May of 1977, a third CU–7 IUD was inserted to replace the second one. (Jean's deposition, p. 37). The couple was sexually active during this time. (Jean's deposition, p. 45). On July 4, 1978, the couple announced their engagement. (Jean's deposition, p. 6). On July 8, 1978, a D & C was performed on Jean to remove the third IUD because of a massive infection. (Jean's deposition, p. 12). The infection did not respond to antibiotics, making it necessary that a complete hysterectomy be performed on July 10, 1978. Richard was fully informed of the course of treatment as it progressed. Richard attended Jean both in the hospital and at home. (Richard's deposition, p. 7). In October 1978, they were married. (Richard's deposition, p. 6). Plaintiffs have not submitted pleadings, affidavits or any other materials claiming the existence of a common law marriage.

### The Legal History of Loss of Consortium

■ Alabama adopted the common law of England where the common law is not in conflict with statutory or constitutional law. Alabama Code, § 1–3–1 (1975). The common law allowed a husband to recover for loss of consortium. Only the husband had this cause of action for injuries to his spouse. 3 Blackstone's Commentaries 140. By virtue of the Equal Protection Clause of the Fourteenth Amendment women's rights expanded, and in Alabama, now a wife can claim for loss of consortium. *Swartz v. United States Steel Corp.,* 293 Ala. 439, 304 So.2d 881 (1974). *Swartz* recognizes the changing times. But, is Alabama, in the name of "changing times", ready to estab-

lish a legal equivalency between ceremonial marriage and "living together" as a matter of public policy? This Court thinks not and is not willing to assume that the Supreme Court of Alabama would do what the Alabama Legislature would not do.

### The Case Law From Other Jurisdictions
#### West Virginia

One of the older cases dealing with this issue is *Booth v. Baltimore & O.R. Co.,* 77 W.Va. 100, 87 S.E. 84 (1915). There the West Virginia court clearly indicates that the wife-victim must have been married to her husband at the time of the injury in order for the husband to have a cause of action for loss of consortium.

#### New Jersey

Another jurisdiction which has dealt with this issue is New Jersey. In *Mead v. Baum,* 76 N.J.L. 337, 69 A. 962 (Sup.1908), a husband was not allowed to recover for the premarital injuries suffered by his wife. However, a recent federal case, *Bulloch v. United States,* 487 F.Supp. 1078 (NJ 1980), here relied upon by plaintiff, holds that a marriage in New Jersey is not necessary at the time of an injury in order to provide a cause of action for loss of consortium. That district court reasoned that to deny a claim for loss of consortium to the unmarried would only aid tortfeasors. Without ever mentioning *Mead v. Baum,* the district court impliedly overruled the highest court in New Jersey on a matter of state law. Since *Bulloch* a New Jersey *nisi prius* court has again had a chance to address this issue. In the very recent case, *Childers v. Shannon,* 444 A.2d 1141, 183 N.J.Super. 591 (1982), a man was denied recovery for injuries suffered by his fiance, even though they were later married. The New Jersey court there understandably suggested that the federal court had read too much into previous New Jersey decisions which purportedly shift the focus of an action for loss of consortium from one grounded on property rights to one grounded in modern tort law. The New Jersey court somewhat patiently explained that it was never the intention of the New Jersey court to allow

unmarried couples to have an action for loss of consortium. A willingness to recognize a wife's claim for loss of consortium could not be interpreted to open the same door to the unmarried. *Ekalo v. Constructive Service Corporation of America,* 46 N.J. 82, 215 A.2d 1 (1965). In short, the federal court opinion in New Jersey appears to have been an aberration.

### New York

New York has also had an opportunity to consider the question. Its first case was decided in 1939. *Rademacher v. Torbensen,* 257 App.Div. 91, 13 N.Y.S.2d 124. A husband there was denied recovery for loss of consortium arising out of injuries his wife suffered two months before they were married. This was recently repeated in *Miller v. Davis,* 107 Misc.2d 343, 433 N.Y.S.2d 974 (1980). In the latter case the husband was injured while on his way to the wedding. The wedding had to be postponed but was duly performed in the hospital on the next day. Adopting the rationale of *Rademacher,* the court held the wife could not recover for loss of consortium because she simply was not married at the time he was injured. If there is to be a case for establishing an exception to the universal rule it would have to be *Miller v. Davis.* The sympathy has to be with the bride. Yet, the traditional law of the family there prevailed, because to create one exception would breed others.

### Pennsylvania

Pennsylvania has also had an opportunity to speak to the issue. Its court held that a marriage relationship is necessary at the time of injury for there to be a claim for loss of consortium. *Donough v. Vile,* 61 Pa. D. & C. 460 (1947). That court clearly held that loss of consortium is designed to compensate for injuries to the marital relationship. To make matters even clearer, the court explicitly held later that a right to sue for loss of consortium cannot be acquired by marrying an injured person. *Sartori v. Gradison Auto Bus Co.,* 42 Pa.D. & C.2d 781 (1967). The Pennsylvania court was singularly unimpressed by the rulings of other courts to the contrary. *Neuberg v. Bobow-icz,* 401 Pa. 146, 162 A.2d 662 (1960), *reversed on other grounds, Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974). In spite of this clear state case law, a federal court in Pennsylvania, cited here by plaintiff reached the opposite conclusion. *Sutherland v. Auch Inter-Borough Transit Co.,* 366 F.Supp. 127 (ED Pa.1973). While the district court there conceded that a marriage is necessary as a general rule, it found that "special circumstances" might still allow a loss of consortium action for injuries to an unmarried partner. Noting that the marriage occurred less than one month after the injury, the court there allowed the husband to sue for his loss of his wife's consortium. The federal court totally ignored the *Donough* case, in which the marriage occurred about a month after the injury. A subsequent Pennsylvania decision clearly indicates that the federal court misunderstood or misapplied state law. In *Rockwell v. Liston,* 71 Pa.D. & C.2d 756 (1975), the Pennsylvania court refused to recognize a cause of action for loss of consortium in circumstances similar to *Sutherland.* Again, an avant garde federal court was rightfully chastised for its over-eager, too innovative interpretation of state law.

### Kentucky

Kentucky considered the question in *Angelet v. Shivar,* 602 S.W.2d 185 (Ky.App. 1980). That court quickly concluded that a claim for loss of consortium is directly dependent upon the existence of a marital relationship. The marital relationship must exist at the time of the injury. The reasons given were three: first, a person is not entitled to marry into a cause of action; second, a husband takes his wife as he finds her, in effect, meaning that the husband cannot claim for loss of consortium until he has had a certain level of consortium; and third, such an alleged injury is not legally foreseeable by the prospective tortfeasor.

### Illinois

Illinois examined the question in *Sostock v. Reiss,* 92 Ill.App.3d 200, 47 Ill.Dec. 781, 415 N.E.2d 1094 (Ill.1980). In an excellently researched opinion, the Illinois court reviewed the major cases then available, par-

ticularly the Pennsylvania cases. The court compared a case for loss of consortium by one of an engaged couple to a case for alienation of affections in which a contract to marry is interfered with. It found that no legal right is violated because a contract to marry creates no legally enforceable rights. This is also the law in Alabama. Code of Alabama § 6–5–330 (1975).

### Maine

Maine considered the issue in *Sawyer v. Bailey,* 413 A.2d 165 (Maine 1980). In that case, the wife-to-be was injured in an automobile accident as the husband-to-be was turning into the printer's driveway to pick up their wedding invitations. They had announced their engagement eleven days previously. In a typically terse Yankee opinion, the court held that a mere engagement does not suffice to create a potential for loss of consortium.

### Florida

Florida also took a look at the question in *Tremblay v. Carter,* 390 So.2d 816 (Fla. 1980). The wife there brought an action for loss of consortium caused by injuries her husband suffered prior to their ceremonial marriage. The court squarely rejected any sort of "special circumstances" test, and held that an actual marriage must exist at the time of injury in order for there to be a valid loss of consortium claim. The court expressly rejected an opportunity to modify the common rule requiring marriage, and said:

> The suggestion is made that because many couples today live together without the benefit of marriage this court should recognize emerging social trends by looking at the actual relationship rather than clinging to the "antiquated common law rule" which requires that the parties be married. Antiquated it may be, but marriage has been the foundation of our nation's family life. Theologians consider marriage to be ordained by God, and secular authority has recognized its importance by subjecting it to comprehensive regulation. While in some instances the obtaining of a marriage certificate may bring about no change in the way a cou-

ple lives, nevertheless, the legal effect is significant. Each party takes on new responsibilities and acquires new rights. If an accident occurs when the relationship of husband and wife does not exist, a person does not acquire the right to claim a loss of consortium when he subsequently marries the injured party.

Florida is next door to Alabama in more than one way.

### California

Finally comes California, which addressed this issue in the most recent case on the subject, *Butcher v. Superior Court of Orange County,* 139 Cal.App.3d 58, 188 Cal. Rptr. 503 (1983), and came up with what may be right for California, but what is probably wrong for the rest of the country, including Alabama. The California court was impressed by what it found was a "stable and significant relationship". In states other than California when partners want social and legal recognition for their relationship, they marry. The application of a "significant and stable relationship" test is so difficult as to be impossible in the real world of the practical. The public policy, so loosely dealt with by the California court, are concerns well articulated in *Childers v. Shannon,* 444 A.2d 1141, 183 N.J.Super. 591 (1982). Would the giving of an engagement ring qualify as creating a significant relationship? If not, how long would the engagement have to exist? Would "going steady" be sufficient? Is cohabitation sufficient? If it is, how much cohabitation? Would a simple "rent sharing" do the trick? What about a "significant" and "meaningful" homosexual relationship? This Court, and the common law, holds that parties, traditionally and actually, are not married unless they are of the opposite sex and go through a marriage ceremony, no matter how long they have been living together, that is, unless they claim a common law marriage, not here claimed by plaintiff. In years long past a couple who lives together can be deemed to manifest an intent to be married and thus to create a common law marriage. "Living together" under today's mores creates no

**724**

presumption of any such intent. To allow the "live in" partner to sue would, in this Court's opinion, not have a salutary effect on tortfeasors but instead would encourage meretricious relationships. The Court cannot believe that the Supreme Court of Alabama would follow California in this issue.

*Alabama*

Although it has not directly addressed the issue, all cases decided by the Supreme Court of Alabama contain the necessary assumption that loss of consortium arises out of a marital relationship. *Harden v. Alabama Great Southern R. Co.,* 45 Ala. App. 301, 229 So.2d 803 (1969), *Williams v. Alabama Neon Sign Co.,* 293 Ala. 454, 304 So.2d 895 (1974), *Swartz v. U.S. Steel Corp.,* 293 Ala. 439, 304 So.2d 881 (1974), and *Slovensky v. Birmingham News Co., Inc.,* 358 So.2d 474 (Ala.1978).

### CONCLUSION

■ In light of the legal history of the action for loss of consortium, the public policy in favor of ceremonial marriage, and the overwhelming, persuasive case authority from other jurisdictions, this Court concludes that a valid marriage at the time of injury is a necessary and indispensable element in any cause of action for loss of consortium in Alabama. If modern social conditions are ever to dictate a different result in Alabama, it must come from the Alabama legislature or the Supreme Court of Alabama.

Therefore, Searle's motion for summary judgment in the husband's case is due to be granted and will be granted in a contemporaneous order.