473 A.2d 947

Mary Jane GILLESPIE–LINTON, et vir

v.

Beverly Ann MILES.

No. 908, Sept. Term, 1983.

Court of Special Appeals of Maryland.

April 11, 1984.

Walter Lee, Rockville, with whom were Charles Norman Shaffer, Peter I.J. Davis, Michael J. Grady and Shaffer & Davis, Rockville, on the brief, for appellants.

Alan R. Siciliano, Upper Marlboro, with whom were O'Malley, Miles, Farrington & McCarthy, Upper Marlboro, on the brief, for appellee.

Argued before WILNER, ALPERT and BLOOM, JJ.

BLOOM, Judge.

Mary Jane Gillespie was driving her automobile on Old Georgetown Road on August 28, 1979, when her car collided with a vehicle driven by Beverly Ann Miles. As a result of the collision, Miss Gillespie sustained personal injuries that

required medical attention. On September 1, 1979, Miss Gillespie married Kevin Peter Linton. Thereafter, the Lintons, appellants, filed a two count declaration against Beverly Ann Miles, appellee, in the Circuit Court for Montgomery County. The first count of the declaration sought damages for the injuries suffered by Mary Jane; the second count asserted a claim by both Mary Jane and Kevin for loss of consortium. Appellee admitted liability, and the court directed a verdict in favor of appellants on the issue of liability as to the first count but granted appellee's motion for summary judgment as to the second count. The case then proceeded to trial on the issue of damages as to the first count. The jury returned a verdict in the amount of $45,000 and judgment was entered thereon. Appellants took this appeal contending that the trial court erred in granting appellee's motion for summary judgment. Appellee then filed a cross-appeal contending that (1) the trial court erred in allowing the jury to consider future pain and suffering as an element of damages and (2) the trial court erred in allowing the jury to consider lost wages as an element of damages. Appellants moved to dismiss the cross-appeal as moot.

### A. *Loss of Consortium*

Under the common law, a husband had enormous control over his wife and her property. Concomitant with that right of control was his right to her services, society, and exclusive sexual attentions. While modern law no longer recognizes a wife as something akin to her husband's chattel, it still "recognize[s] a husband's rights to the services, society and sexual attentions of his wife, and if she is injured by the defendant's tort, the husband is allowed to recover when his rights of consortium are thus affected." D. Dobbs, *Handbook on the Law of Remedies* § 8.11 (1973) (footnote omitted), *see also,* W. Prosser, *Law of Torts,* § 124 (4th ed. 1971). Today, in Maryland, a loss of consortium action is not founded on a husband's proprietory rights in his wife but, rather, on a recognition of "a right to recover for an injury to the marital entity. . . . " *Deems v. Western Md.*

*Ry.,* 247 Md. 95, 107, 231 A.2d 514 (1967). Appellants contend that "special circumstances and issues of equity and fairness . . . call for the expansion of the right to recover for loss of consortium" to couples who marry shortly after one of them suffers an injury at the hands of a negligent third party. Appellants rely heavily on cases from other jurisdictions which they believe support their contention.

The United States District Court for the Eastern District of Pennsylvania held, in *Sutherland v. Auch Inter-Borough Transit Co.,* 366 F.Supp. 127, 134 (E.D.Pa.1973), that Pennsylvania law would permit a loss of consortium action "where, at the time of the accident, plaintiffs were engaged to be married and the wedding date was less than a month away." The District Court engaged in little analysis in reaching this conclusion and, in fact, "[n]o rationale is offered to support the departure from the traditional elements of a loss of consortium claim." *Childers v. Shannon,* 183 N.J.Super. 591, 593, 444 A.2d 1141, 1142 (Law Div.1982).

Although the Pennsylvania appellate courts have not had occasion to address the *Sutherland* decision, lower courts in that state have rejected *Sutherland* as not being an accurate description of Pennsylvania law. The Court of Common Pleas of Fayette County, in *Rockwell v. Liston,* 71 Pa.D. & C.2d 756 (1975), held that a wife has no cause of action for loss of consortium where the injury to the husband occurred while the parties were engaged but one month before they were actually married. The *Rockwell* court expressly rejected the federal court's conclusions in *Sutherland* and pointed out that prior to *Sutherland* state lower courts had "held that there is no cause of action unless the parties are married on the date of the accident." *Id.* at 757 (citations omitted). The court then stated that it was

of the opinion that the Supreme Court would be unwilling to extend the rule where there is, in fact, no marriage.

The plaintiff-wife advances the theory that there should be a determination made in each case as to whether the relationship was such between the parties prior to the accident that marriage was reasonably foreseeable. We

feel that this is too vague and indefinite a standard to apply in determining as to whether or not a cause of action exists.

*Id.* at 758.

Similarly, the Court of Common Pleas of Franklin County held that "[i]n Pennsylvania it is clear that a husband cannot recover for loss of consortium of his wife where the cause of action arose prior to the marriage. . . ." *Akers v. Martin,* 14 Pa.D. & C.3d 325, 328 (1980) (citations omitted). At the time of the accident, the plaintiffs were engaged and planning to be married in three days. As a result of the accident, however, the wedding was postponed for one-and-a-half months. While recognizing the close proximity in time between the defendant's tortious conduct and the plaintiff's actual marriage, the court nonetheless sustained the defendant's demurrer.

Appellants also point to *Bulloch v. United States,* 487 F.Supp. 1078 (D.N.J.1980), as support for nonmarital loss of consortium claims. David and Edith Bulloch were married on June 5, 1951, and resided together in the same household. In late April 1974 they separated. Subsequently, on February 17, 1977, the Bullochs were divorced. Sometime prior to May 21, 1977, however, they reunited and agreed to begin living together again. On May 21, David suffered the injury which was the cause of the litigation and was consequently hospitalized. During his hospitalization, "he abandoned his separate living quarters, his lease was terminated and all of his belongings were returned to [the] marital abode." *Id.* at 1081. When David was discharged from the hospital in September 1977, he and Edith began residing together again at the marital home. Edith, in an affidavit filed in opposition to the defendant's motion for summary judgment, related that the couple had intended to remarry but that they were advised that since the accident had left David impotent any marriage ceremony "would be of no effect." *Id.* The Bullochs then brought suit alleging, *inter alia,* loss of consortium.

The District Court, aware that the question presented was a novel one, "concluded . . . that in New Jersey proof of a legal marriage is not an essential element of a consortium claim." *Id.* at 1079. The court made several observations to support its conclusions. It first noted that nonmarital cohabitation is a lawful practice in New Jersey. It then determined that the public policy favoring marriage was outweighed by "[t]he strong New Jersey policy of compensating those whose injuries are proximately caused by the tortious conduct of others. . . ." *Id.* at 1085. Finally, the court noted that the policy concerns which prohibit children from bringing consortium-type actions for injuries to their parents[1] grow out of the unique relationship between parent and child and "do not, therefore, present a bar to recognition of Edith Bulloch's claim." *Id.* at 1087. Thus, the court held "that the New Jersey courts would permit a cohabitant who has suffered the same type of injuries as a spouse to bring an action for loss of consortium." *Id.*

The District Court, however, recognized that that particular holding did not, by itself, give Edith Bulloch standing to bring her loss of consortium action. It was undisputed that David and Edith were not yet living together on the day of the accident. Indeed, the court stated that "[t]he question remains to be examined as to whether a spouse in Edith Bulloch's circumstance would be entitled to recover. In particular, does the undisputed fact that she was not living with David Bulloch on the day of the accident bar her from recovery." *Id.* The court answered that question in the negative and thus allowed Edith to present her case for loss of "services, aid, comfort and conjugal fellowship of the type typically shared by spouses. . . ." *Id.* at 1088. The court did not think that the mere fact that David and Edith were not living together should bar her claim.

In an action brought either by a spouse or a cohabitant, the question of actual damage and degree of damages

---

1. *Russell v. Salem Transportation Co.,* 61 N.J. 502, 295 A.2d 862 (1972).

must be left to the factfinder. In today's world, spouses occasionally live apart, yet it would be foolish to suggest that it logically follows from that fact alone that services, aid, comfort and conjugal fellowship are not present in the relationship.

*Id.* Thus, the district court not only held that cohabitants can sue for loss of consortium but it also held that, under certain circumstances, "non-cohabitating cohabitants" can bring such an action.

Not unlike the Pennsylvania courts' reactions to *Sutherland,* the New Jersey courts have viewed *Bulloch* in an unfavorable light and have declined to follow it. The Superior Court of New Jersey, Law Division for Cumberland County, held that marriage at the time of injury is a prerequisite to a claim for loss of consortium. *Childers v. Shannon, supra.* There, the plaintiffs, pointing to *Bulloch,* sought to recover damages for loss of consortium stemming from an accident that occurred about two months prior to their wedding. The court rejected the holding in *Bulloch* and granted the defendants' motion to dismiss. The court recognized that "[i]n New Jersey, entitlement to recovery for loss of consortium is based on the plaintiffs' interest in their relationship with one another...." 444 A.2d at 1142 (citation omitted). The court then noted that

[m]arriage, however, is the only legal touchstone by which the strength of a male-female relationship may be tested. It is not the function of this court to sift through the myriad relationships of a party in a negligence action to determine which of those near and dear have suffered an injury proximately caused by tortious conduct. Should this court allow this plaintiff's claim for loss of consortium, other courts will be forced to determine which plaintiffs have relationships sufficiently meaningful to entitle them to claim consortium. Plaintiffs here were engaged to be married at the time of the accident; how long an engagement will support a claim? One month? One week? "Going steady"? Or is cohabitation to be the

test, as it apparently was in *Bulloch?* Again: For how long? Was there joint payment of rent? Grocery bills?

Presumably, when parties wish social and legal recognition of their relationship, they marry.

*Id.* at 1142–1143.

Similarly, the Appellate Division of the Superior Court has held that "[t]he right of recovery for loss of consortium resulting to a wife by reason of an injury to her husband, is founded upon the marriage relation. Absent such relationship, the right does not exist, and thus no recovery may be had for loss thereof." *Leonardis v. Morton Chemical Co.,* 184 N.J.Super. 10, 11, 445 A.2d 45 (A.D.1982) (citations omitted). The court simply stated that it found no merit in and declined to follow *Bulloch.* 445 A.2d at 46.

We are aware of only one state court decision allowing a person who is not married at the time of an injury to present a cause of action for loss of consortium. *Butcher v. Superior Court of Orange County,* 139 Cal.App.3d 58, 188 Cal.Rptr. 503 (1983). In that case, Paul and Cindy Forte had begun living together on September 11, 1969. Thereafter, Cindy used Forte as her last name, and the couple had presented themselves as husband and wife although they were never actually married. Paul was walking across the street on March 28, 1981, "when he was allegedly struck by Ralph Butcher's Volkswagen." 188 Cal.Rptr. at 504. As a result of that collision, Paul sustained a fractured neck, forearm and leg and a severe cerebral contusion. Paul sued Ralph for personal injuries, and Cindy sued for loss of consortium. Ralph moved for summary judgment on Cindy's consortium claim, but the trial court denied the motion. Ralph then petitioned the Court of Appeal for the Fourth District for a writ of mandate to compel the trial court to grant the motion for summary judgment.

The appellate court reasoned that the real theory of the cause of action for loss of consortium rested in compensating the damage "to what may be called a relational interest. An interference with the continuance of the relation, unim-

paired, may be redressed by a tort action." *Id.* at 505 (citation omitted). The court then addressed the "policy questions which would arguably limit recognition of the relational interest to legally married couples . . ." *Id.* at 506. The court concluded that, in determining whether an unmarried cohabitant should be permitted to recover for loss of consortium, the critical question is foreseeability.

> We adhere to the view that the courts must determine on a case-by-case basis what an ordinary person may reasonably foresee. The incidence of cohabitation without marriage in the United States increased by 800 percent between 1960 and 1970. . . . The injury to the de facto spouse, like the injury to a legally married spouse, is real, direct, and foreseeable. We believe that, in the conditions of modern society, the possibility that an adult may be cohabitating with another is neither unexpected nor remote; in short, it is reasonably foreseeable.

*Id.* at 510–511 (citation omitted).

Thus, the court held "that an unmarried cohabitant may state a cause of action for loss of consortium by showing that the nonmarital relationship is both stable and significant." *Id.* at 512. In so holding, the *Butcher* court recognized that loss of consortium is predicated upon damage to a relationship in existence at the time of injury. *Butcher* merely allows a plaintiff to substitute cohabitation for marriage as a necessary element in a consortium action. It is concerned, therefore, with injuries to "quasi-marital" relationships. To recover under *Butcher* a plaintiff must show (1) cohabitation and (2) the existence of a "stable and significant" relationship.

In limiting the possibility of recovery to couples who had a "stable and significant" relationship at the time of injury, the court stated that the loss of consortium action

> protects the parties' relational interest, and if the relationship did not exist at the time of the tort, a fortiori it could not be injured. In fact, application of this principle to all of the premarital injury cases would lead to the same

result in each case. If the injury occurs before the relationship is established, *when the parties are engaged,* or acquainted, or perhaps total strangers to one another, then the interest in continuing the relationship undisturbed has not been injured.

*Id.* at 506 (emphasis added). In holding that a relationship must exist at the time of the tort, the court distinguished the decision in *Tong v. Jocson,* 76 Cal.App.3d 603, 142 Cal.Rptr. 726 (1977). The *Tong* court denied a husband's claim for loss of consortium based on the premarital injury to the wife. The couple was engaged and had been living together for about three months at the time of the injury. The *Butcher* court reasoned "that the court [in *Tong*] could not say the relationship had become sufficiently established to recognize the relational interest." *Butcher,* 188 Cal.Rptr. at 508. Thus, even under California law according to *Butcher,* a plaintiff who is merely engaged to an injured party at the time of the injury cannot recover for loss of consortium. Therefore, even if we were to apply the liberal *Butcher* test to appellants, they would not be entitled to recover for loss of consortium. For example, in *Lieding v. Commercial Diving Center,* 143 Cal.App.3d 72, 191 Cal.Rptr. 559 (1983), the Court of Appeal for the Second District held that a person whose spouse sustained personal injuries while the couple was engaged, but before they were married, does not have a cause of action for loss of consortium. The court noted that "[t]o the limited extent that the *Butcher* case considers a relationship of the type disclosed by appellants' declarations, it supports the conclusion that appellant wife has no cause of action for loss of consortium." 191 Cal.Rptr. at 562.

While appellants may ask us not only to accept *Butcher* but also to expand upon its holding, other courts have denounced *Butcher* for going too far. The California Court of Appeal for the First District "decline[d] to follow that case, and ... adhere[d] to the line of authority which confines recovery for loss of consortium to an injury which occurs within a legal marriage." *Hendrix v. General Motors*

*Corp.,* 146 Cal.App.3d 296, 303, 193 Cal.Rptr. 922, 927 (1983). The *Hendrix* court noted that their

> research has disclosed only two cases, other than *Butcher,* which permitted a cause of action for loss of consortium by a plaintiff who was not married at the time of the accident: *Bulloch v. United States* (D.N.J.1980) 487 F.Supp. 1078 and *Sutherland v. Auch Inter-Borough Transit Co.* (E.D.Pa.1973) 366 F.Supp. 127. Both were federal district court cases in which those courts were purporting to predict how the state courts would rule. Both have since been repudiated by state courts.
>
> No *state* court has ever allowed an unmarried plaintiff to state a claim for loss of consortium.... *Butcher* therefore stands alone against the unanimous opinion of our sister state courts.

193 Cal.Rptr. at 927 (emphasis in original) (citations and footnote omitted).

■ Our Court of Appeals has held that a loss of consortium claim "can only be asserted in a joint action for injury to the marital relationship." *Deems,* 247 Md. at 115, 231 A.2d 514. Today, we hold that only injury to a *marital* relationship which exists at the time of the injury can support an action for loss of consortium. A showing that the plaintiffs were engaged at the time of the injury and either were married shortly after the injury or were living together at the time of the injury will not suffice. To hold otherwise would be to adopt a vague, indefinite standard that would be incapable of just or predictable application. In the words of the United States District Court for the Northern District of Alabama: "Would the giving of an engagement ring qualify as creating a significant relationship? If not, how long would the engagement have to exist? Would "going steady" be sufficient? Is co-habitation sufficient? If it is, how much cohabitation? Would a simple 'rent sharing' do the trick?" *Weaver v. G.D. Searle & Co.,* 558 F.Supp. 720, 723 (N.D.Ala.1983). The answer to all of those questions, of course, is that no one knows.

We also note that the General Assembly has abrogated the right to sue for breach of a promise to marry. Md.Cts. & Jud.Proc.Code Ann. § 5–301. "It would be anomalous to permit a person to recover for the loss of consortium yet deny that same person recovery for the loss of those same marital benefits upon the failure to carry out the promise of marriage." *Hendrix,* 193 Cal.Rptr. at 924 (citations omitted). Furthermore, any decision to extend to unmarried persons legal rights previously held only by married persons would necessitate identifying and weighing competing notions of public policy, social mores, and moral values. Such a decision is best left to the General Assembly. "Only the Legislature responsible to the electorate should have the power to make such a radical change in the fabric of society." *Id.* at 925 (citation omitted).

In the absence of such a legislative determination, we agree with the reasoning of the Supreme Judicial Court of Maine in *Sawyer v. Bailey,* 413 A.2d 165, 167 (Me.1980) (citations omitted):

> The general rule is that no person has a right of action against a wrongdoer, unless that person is personally injured. The cause of action accrues, generally, when the tort is committed. . . . When the alleged antenuptial tort was committed by the defendant against the woman plaintiff, the man plaintiff suffered no injury, because he possessed no marital right at that time, never having assumed any marital obligations. When Daniel Sawyer later took Lynn Jackson as his lawful wedded wife, he took her for better or for worse in her then existing health, voluntarily taking into himself any marital deprivation that might result from his wife's premarital injury.

### B. *Appellee's Cross-Appeal*

#### 1. *Mootness*

■ Six days after the jury verdict in this case, the full amount of the jury's verdict was paid and satisfied by appellee's insurance carrier. Appellant contends that "[b]y

paying and satisfying the damages awarded by the jury to Plaintiff Mary Jane Gillespie-Linton, there no longer exists any dispute between the parties as to the issues raised by the Cross-Appellant." We disagree. The Court of Appeals expressly held, in *Franzen v. Dubinok,* 290 Md. 65, 72, 427 A.2d 1002 (1981), "that the payment or performance of a final judgment does not normally bar an appeal...." Appellant's motion to dismiss appellee's cross-appeal, therefore, is denied.

## 2. *Future Pain and Suffering*

■ The following colloquy occurred at the bench after the court had instructed the jury:

MR. SICILLIANO [appellee's attorney]: All right. I would also like to take exception to the instruction by the Court concerning future damages such as pain and suffering and not the future medical expenses, of course, but other future damages. Because I don't believe that the jury has any basis to project those since we don't know her life expectancy.

MR. DAVIS [appellants' attorney]: We have some protection of the rule. I did forget to have the Court take judicial notice of the life table.

MR. SICILLIANO: That's why I'm making the objection.

MR. DAVIS: It's in the instructions.

THE COURT: Do you have the life table? I don't see that in there.

MR. SICILLIANO: I know you can show me the chart, Mr. Davis, I understand you didn't put it into evidence.

MR. DAVIS: I forgot.

THE COURT: All right, I'll instruct them on that, I'll correct that. What is it 54.8 as you've seen that?

MR. DAVIS: 54.8.

MR. SICILLIANO: Your Honor, in that case I'll withdraw my objection because I don't want the Court now to

tell them that it's 54.8 years, because now we're going back and enhancing it.

THE COURT: All right. Then he will be permitted to argue for the rest of her life, whatever that might be.

MR. DAVIS: Judge, I wonder if the Court would allow me to be open to the first edition of the white paper, that a person at age 25 at the time of the accident would have a life expectancy of 54.8 years.

MR. SICILLIANO: I object.

THE COURT: All right. I'm going to re-instruct them all, instruct them on that.

The court then re-instructed the jury as follows:

Mr. Foreman, ladies and gentlemen, there's one additional factor I want to mention to you. I did suggest to you that if you find from the evidence that the plaintiff suffered permanent injury, then it would be proper for you to consider any future expenses and any future pain and suffering that she might suffer or endure for the remainder of her life.

I would instruct you that under the life tables that have been accepted, a woman of the age of Mary Linton has an expectancy of 54.8 years from today.

MR. DAVIS: Judge, I'm sorry, I think that was from the date of the accident.

THE COURT: That was in '79.

MR. DAVIS: August 28th, 1979.

THE COURT: 1979, 54.8. All right, Mr. Davis, would you like to address the jury?

Appellee alleges that the court made two errors in allowing the jury to consider future pain and suffering. Appellee's first contention is that the court erred in allowing the jury to consider future pain and suffering when the jury had no evidence of Mary Jane's life expectancy on which to base such an award. Appellee's other contention is that Mary Jane's life expectancy was not properly introduced into evidence.

While we certainly agree with appellee's statement that "any award of damages may not be based upon speculation or uncertainty," we cannot agree with her conclusion that this jury's award was so based. Contrary to appellee's protestations, the jury had sufficient evidence from which it could determine Mary Jane's life expectancy. The jury was instructed that, based upon life tables, Mary Jane had a life expectancy of 54.8 years. "Courts in Maryland have long recognized the propriety of using mortality or life expectancy tables to give some guidance to the jury in personal injury or wrongful death cases." *Byrum v. Maryott,* 26 Md.App. 130, 131–132, 337 A.2d 142 (1975). Appellee, relying on *Hutzell v. Boyer,* 252 Md. 227, 249 A.2d 449 (1969), argues that, in the absence of any testimony that Mary Jane would live to her normal life expectancy, any jury award for future pain and suffering was based on mere speculation. The Court of Appeals in *Hutzell,* in holding that the jury had sufficient evidence on which to base an award for future damages, noted that the plaintiff had presented evidence of his age along with his physician's expert opinion that plaintiff would live his normal life expectancy. The Court, however, did not hold that such medical testimony was necessary in order for a plaintiff to recover an award for future damages. Rather, the Court held that, in the absence of evidence as to life expectancy, such medical testimony would suffice. *Id.* at 238, 249 A.2d 449. In the instant case, there was evidence of Mary Jane's life expectancy, *i.e.,* the life tables; and there was no evidence of any factors suggesting that such statistics should be inapplicable to her.

Appellee's real complaint, however, appears to be with the manner in which the jury was informed of Mary Jane's life expectancy. Essentially, what the court did was allow Mary Jane to re-open her case so that she could supply, via judicial notice, the applicable life expectancy figure as evidence for the jury to consider. The decision to permit a party to re-open her case for the purpose of supplying additional evidence is within the sound discretion of the trial judge and will not be disturbed on appeal unless

there has been an abuse of that discretion. *Telak v. Maszc-zenski*, 248 Md. 476, 237 A.2d 434 (1968); *Nicholas v. Owrut-sky*, 230 Md. 60, 185 A.2d 498 (1962). Here, there has been no showing that the court abused its discretion. Further-more, courts may take judicial notice of life expectancy tables. 29 Am.Jur.2d *Evidence* § 113 (1967). Of course, an instruction to the jury that under accepted life tables a party has a life expectancy of 54.8 years from the time of the injury may add undue weight to something which is, after all, only a matter of evidence. In view of appellee's concession during argument that there is no dispute as to the accuracy of the particular tables, we see no prejudice to appellee in the manner of presentation.

We hold that the trial court did not err in allowing the jury to consider future pain and suffering as an element of damages.

### 3. *Lost Wages*

■ The trial judge instructed the jury that in calculating damages "[y]ou may consider any loss of earnings that you find from the evidence that the plaintiff suffered as a result of these injuries." Appellee objected to the instruction on the basis that Mary Jane had been paid her wages and that the payment of those wages did not constitute compensation for her injuries from a collateral source. A plaintiff's dam-ages for lost earnings "are not to be reduced because of the payment of his wages by his employer during the period of disability *due to the accident, Plank v. Summers,* 203 Md. 552 [102 A.2d 262] . . . ." *Leizear v. Butler,* 226 Md. 171, 175, 172 A.2d 518 (1961) (emphasis added).

■ Essentially, appellee's argument is that Mary Jane did not lose any earnings *due to her accident.* Based upon Mary Jane's admission that her employer had promised to pay her salary for the week of her honeymoon, appellee contends that the collateral source rule does not apply because payment of Mary Jane's salary during the time she was off work was due to her honeymoon and had no rela-tionship to her injuries. Appellee's argument is basically

one of causation; that the loss of time from work did not result from the plaintiff's injuries. Although Mary Jane was planning to miss one week's work after her wedding for a honeymoon and did in fact go on a honeymoon, there was also evidence to the effect that she missed work from the day following the accident to the end of that week. In view of that evidence, the trial court did not err in instructing the jury that it could consider any loss of earnings that Mary Jane sustained as a result of her injuries.

JUDGMENT AFFIRMED.

ONE–HALF OF THE COSTS TO BE PAID BY APPEL-LANTS.

ONE–HALF OF THE COSTS TO BE PAID BY APPEL-LEE.