MARY D. MEAD AND WILTON G. MEAD, HER HUSBAND, v. HENRY BAUM.

Argued February 20, 1908—Decided June 8, 1908.

No action lies by a husband against a person who has committed a tort upon the woman whom the plaintiff was engaged to marry at the time of the tort, and whom he subsequently marries.

---

On rule to show cause why a new trial should not be granted.

Before Justices REED, PARKER and VOORHEES.

For the rule, *Wood McKee* and *Michael Dunn.*

Contra, *George S. Hilton* and *William L. McCue.*

The opinion of the court was delivered by

REED, J. This action was brought by Mary D. Mead and her husband to recover damages for an injury to Mrs. Mead,

occurring upon the premises of the defendant, on July 4th, 1905.

The lady had gone to Lincoln Park with her father to witness an exhibition of fireworks. Lincoln Park is owned by the defendant and is used as a pleasure resort. On this 4th of July the grounds and buildings had been rented for a picnic to the Letter Carriers' Association. Within the park is a restaurant and dance pavilion. The dimensions of the latter are fifty-nine by one hundred and one feet. There are double doors leading out from this building upon a platform. The opening of these doors is nine and one-third feet wide. The platform, or porch, in front of the doors is reached by a step-down of eight and one-half inches. This platform is five feet ten inches wide. The platform is about six feet above the ground, with nine steps leading down to the ground. These steps, however, are not in front of the double doors, but are at the end of the porch. In front of the doors was a railing which ran from one end to the other of the porch, so that a crowd in going out of the double doors, instead of going directly forward to the steps leading down to the ground would be confronted by the railing, and compelled to turn to the right and pass along the porch to the stairway.

The plaintiff, with her father, entered the grounds of the park on this night, but did not enter the dance pavilion and in walking approached this porch. There seems to have been a large number in the dance hall when the exhibition of fireworks began. The fireworks attracted the attention of those within the building, and a large number passed out of the double doors on to the porch until the porch became crowded and pressed against the railing or against others who stood by the railing. The railing gave way, and a number of persons fell off the platform on the ground beneath and some part of the platform, or some falling persons, struck the plaintiff, Mrs. Mead, and caused the injury for which this action is brought.

The negligence charged against the defendant is that he did not take reasonable care to provide a reasonably safe

railing to protect those who were likely to visit the dance pavilion. Considering the crowds that were accustomed to attend the picnics and other functions at this park, and the use to which this porch or platform was likely to be put in affording egress to those within the pavilion, it was a duty imposed upon the defendant to take reasonable care to protect those likely to use the pavilion by making a reasonably safe barrier against the danger of falling from the porch, or of being injured by those falling therefrom.

The danger of an accident like the one which occurred was enhanced by the fact, as already remarked, that the steps, instead of being directly in front of the doors were some distance to the right of the doors, and a crowd going out of the doors and turning to the right would be likely to be pressed against the railing.

We think there was testimony from which the jury had the right to conclude that the railing was not reasonably safe. Two witnesses, just before the accident, while leaning against the railing, discovered that it was unstable, and one of them says that the corner of the railing was away from the post so far that the witness could put his hand through the aperture. The carpenter who repaired the railing after the accident described the construction of the old railing as it appeared to him. It consisted of ceiling boards, with a pat or shoe, and the boards fitted into the shoe. He says he was unable to use the old top rail in making his reparation because it had so shrunk that it was too short for the purpose. He says the original rail had become so soft that it would not hold the nails; that the rail had been fastened to the post by eight-penny nails, and that the nails had become rusted away; that they were very light nails for work of that kind. He also says that where there is a job where they expect a pressure against the railing, it is usual to mortise the railing to the post, if the post is large enough to admit of so doing. Mr. Weir, an architect, also says that the rail was too light for the place and that it ought to have been mortised.

This testimony regarding the condition of the rail, and respecting its adequacy for the purpose for which a railing at

such a locality is constructed, was forcibly assaulted by witnesses for the defendant.

We cannot, however, say that the finding of the jury was so conspicuously against the weight of the testimony as to justify a new trial; nor was the proof of an inspection by the defendant or his employes of such a character as to permit us to say that the defendant exercised reasonable care in supervising the condition of the railing.

Nor was the defendant relieved from liability for the result of an accident because the premises had been leased temporarily to the Letter Carriers' Association to be used by them for the purposes of a picnic. *Gleason* v. *Boehm,* 29 *Vroom* 475; *Siggins* v. *McGill,* 43 *Id.* 263.

Indeed, no point upon this ground was made by the counsel for the defendant.

But the case presents another question: The plaintiffs are husband and wife, but their marriage occurred after the date of the accident. The declaration contains a claim by the husband in his own right for the loss of the services of his wife, and for expense incurred by him as her husband in her care and cure. The jury awarded him the sum of $500. The jury also awarded to the wife for her claim arising out of the injury the sum of $1,500.

It is impossible to conceive of any legal principle upon which the action of the husband can be supported. It is true that it is pleaded and proved that at the date of the accident there was a mutual agreement between the plaintiffs to intermarry. But, although the female plaintiff was under contract to marry the male plaintiff, no action by him will lie against the defendant for either preventing the execution of that promise or for causing the promise to be of less value and more burdensome to him.

In *Dale* v. *Grant,* 5 *Vroom* 142, the plaintiff held a contract by which he was to receive all the articles to be manufactured by a certain corporation. The defendant cut the belts and stopped the machinery of the corporation, and so prevented it from furnishing the articles to the plaintiff according to the contract, to the plaintiff's injury. In de-

livering the opinion of the Supreme Court, Justice Beasley said: "The principle of law which alone will sustain such an action is this: that a suit will lie against a wrong-doer who prevents either in whole or in part a promisor from fulfilling his contract to the loss of the promisee." The Chief Justice, in denying the existence of a right of action in such a situation, proceeded to say: "The law does not attempt to give full reparation to all the parties injured by a wrong committed. * * * It is only the proximate injury that the law endeavors to compensate, and the more remote comes under the head of *damnum absque injuria."* He then cites, as illustrative of this rule, the case of *Anthony* v. *Slaid,* 11 *Melc.* 290, where A. agreed with a town for a specific sum to support all the town paupers, and he then brought an action against S. for beating one of the paupers, whereby A. was put to increased expense for the pauper's cure and support. The right of A. to an action against S. who had rendered the execution of the contract more onerous, was denied upon the ground that the damage was too remote and indirect.

Other cases were cited, in which an insurance company, who had contracted to insure the life of a person, was not permitted to recover against the defendant who had caused the death of the party insured. The Chief Justice called attention to the fact that the situations which these cases presented were common occurrences, and yet no precedent could be found where an action was successfully maintained, which in itself was an almost conclusive argument against its maintainability.

It seems clear, therefore, that the existence of a promise to marry, and the fact that the injury to the woman rendered the promise of less value to the man, and entailed upon him expense and care, laid no foundation and presented no reason for an action against the defendant.

Nor did any right of action by the husband spring into existence from the fact that he afterward married the female plaintiff. The tort of which this complainant complains was not committed upon his wife. It is true that the injury affected the ability of the wife to render services to her hus-

band after marriage, but eliminating the existence of previous promise to marry as a cause of action, as we must, the husband stood as any other husband who marries a woman who had been crippled by some previous negligent act of a third party.

The right to an action by a husband for an injury to his wife rests upon the same ground as the right of a master to sue for injuries to his servant, or a father for injuries to his child. The right flows from the duty of the wife, or the servant, or the child, to render services to the husband, the master or the parent. If, therefore, a husband has a right to sue a third party for causing an antenuptial injury to his wife, so the master would have the right to sue for an injury to a servant committed before his employment. I doubt if any action by a master on such a ground was ever brought, and I am quite sure no such action was ever successfully maintained. In fact, the master takes his servant as he is at the time of his employment, and the husband takes his wife as she is at the time of their marriage. Neither master nor husband in his own right gets any standing to sue for former torts to the servant or the wife. The assertion of a right of action by a husband for antenuptial injuries to his wife is so entirely novel that the courts seem to have had no occasion to deal with the proposition; but the ground upon which such a pretension must be regarded as fallacious is incidentally touched upon by Chief Justice Beasley in his opinion in *Buchanan* v. *West Jersey Railroad Co.,* 23 *Vroom* 265.

In that case an action was brought by a husband and wife to recover for injuries received by the wife before her marriage. The charge of the trial judge was objected to, because he permitted the jury to include in its verdict damages for the loss of the wife's earning capacity, she having been a public singer. The objection was that her husband was entitled to her earnings and should recover them in his own action. The Chief Justice held that this view was fallacious, and observed that the husband lost nothing by this disability of the wife. When he married her the deprivation existed,

and consequently he had never possessed nor become entitled to that which had suffered impairment, and that it was plain that the loss in that respect was the loss of the wife.

We therefore think that the verdict in favor of the husband must be set aside.

The verdict in favor of the wife will be permitted to stand, and the rule as to her will be discharged.