**Peter C. KELLEHER, Phyllis Kelleher, Peter Charles Kelleher Jr., Kyleen Rose Kelleher, Plaintiffs,**

v.

**BOISE CASCADE CORPORATION, Defendants.**

**Civ. No. 87–0058–P.**

United States District Court, D. Maine.

Jan. 5, 1988.

George F. Leahy, Joseph G. Abromovitz, Boston, Mass., for plaintiffs.

James M. Bowie, Portland, Me., Guy G. Hurlbutt, Boise, Idaho, for defendants.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

GENE CARTER, District Judge.

### I. Introduction

Plaintiff Peter Kelleher is a commercial diver. On May 11, 1982, he and two other divers were cleaning sand from the bottom of a run-off tank in the effluent treatment system at Defendant's paper mill in Rumford, Maine. Plaintiff alleges that, during that dive, he inhaled bacteria and other substances that caused him serious injury. In this action, Plaintiff seeks to recover for his injuries, alleging Defendant was negligent in failing to warn him of the risks of injury. His wife, Phyllis Kelleher, seeks to recover damages for alleged loss of marital consortium arising from Plaintiff's injuries. Finally, Plaintiff's children, Kyleen Rose Kelleher and Peter Charles Kelleher, seek to recover damages for alleged loss of parental consortium.

On December 14, 1987, Defendant moved to dismiss the marital and parental consortium claims. For the reasons stated herein, the Court grants the motion.

### II. Factual Background

Plaintiff Peter Kelleher alleges that he inhaled high concentrations of bacteria, chemicals and other substances during his dive in Defendant's run-off tank on May 11, 1982. He alleges that he has suffered serious and permanent illnesses as a result of the substances he inhaled. A timeline of the development of his illnesses, and of his family relationships out of which many of the claims in the Complaint arise, helps clarify the issues.

Immediately after his dive on May 11, 1982, Plaintiff had trouble breathing and

sought medical attention. He was diagnosed as having inhalation pneumonitis, a respiratory ailment linked to the inhalation of foreign substances, and was hospitalized from May 11 through May 19, 1982. Sixteen months later, he married Phyllis (Elwell) Kelleher.

In January, 1984, Plaintiff was examined and, because of a physician's findings that his airways were mildly obstructed and his hearing decreasing in both ears, declared unfit to dive. Later that month, he reported wheezing and shortness of breath to a second physician. One month later, he was diagnosed as suffering from acute asthma. He was directed to take a medication he classifies as a corticosteroid.

On February 20, 1985, Plaintiff's first child, Peter Charles Kelleher, Jr., was born. In November, 1986, Plaintiff was first diagnosed as suffering from aseptic necrosis of the femoral heads, a degenerative condition in the hips. Plaintiff alleges the necrosis was caused by the corticosteroids he was prescribed to combat his respiratory ailments. On January 13, 1987, Plaintiff's second child, Kyleen Rose Kelleher, was born.

### III. Procedural Background

In Count I of his Complaint, Plaintiff seeks recovery for alleged negligent failure to warn. In Count V, Plaintiff alleges his injuries resulted from Defendant's "wanton, gross and outrageous conduct and express or implied malicious failure ... to warn of grave and latent dangers." Count V seeks punitive damages. Count IX alleges negligent failure to maintain the run-off tank adequately to prevent injury. Finally, Count XIII alleges that Defendant's failure to maintain the run-off tank was "wanton, gross and outrageous and express or implied malicious conduct," entitling Plaintiff to punitive damages.

In Counts II, VI, X and XIV, Phyllis Kelleher seeks damages for loss of marital consortium arising from the substantive injuries her husband alleges in Counts I, V, IX and XIII. In Counts III, IV, VII, VIII, XI, XII, XV and XVI, Peter Charles Kelleher, Jr. and Kyleen Rose Kelleher seeks damages for loss of parental consortium arising from the substantive injuries their father alleges in Counts I, V, IX and XIII.

Defendant has moved to dismiss all consortium claims, on the grounds they are barred by state law on these facts.

### IV. Analysis

#### A. Marital Consortium Claims

Plaintiff Peter Kelleher was not married to Phyllis Kelleher on May 11, 1982, when he dove in Boise Cascade's run-off tank. Maine law expressly and unambiguously bars recovery for loss of marital consortium when the tortious injury occurs before marriage. *Sawyer v. Bailey*, 413 A.2d 165 (Me.1980).

Plaintiff claims, nonetheless, that although the alleged torts occurred prior to his marriage, the injuries and illnesses resulting from the torts did not become manifest until after marriage. He claims that his cause of action against Defendant accrued when his illnesses were diagnosed, after marriage, and that his wife is therefore entitled to recover for loss of marital consortium.

The issue before the Court, therefore, is when Plaintiff's cause of action against Defendant accrued. The test is when Plaintiff suffered a judicially cognizable injury. *Williams v. Ford Motor Co.*, 342 A.2d 712 (Me.1975). As a general rule, a judicially cognizable injury exists from "the moment ... a wrongful act produces an injury for which Plaintiff is entitled to seek judicial vindication." *Myrick v. James*, 444 A.2d 987 (Me.1982).

Plaintiff claims he did not suffer a judicially cognizable injury until he was diagnosed as having asthma and aseptic necrosis. He relies on the discovery rule of accrual established in asbestosis cases, under which the cause of action accrues not when a potential Plaintiff inhales a foreign substance, but when the injuries from that inhalation manifest themselves. *See Bernier v. Raymark Industries, Inc.*, 516 A.2d 534 (Me.1986) (inhalation alone insufficient to give rise to legally recognizable cause of action; actionable harm is man-

ifestation of disease in body, not exposure to potentially hazardous substance). While the factual similarities between asbestos inhalation cases and this case appear to make the discovery rule equally applicable here, the factual distinctions convince the Court that applying a discovery rule in this instance would be inappropriate.

In asbestos inhalation cases, as in other tort cases in which the discovery rule of accrual has been adopted,[1] accrual is delayed out of fairness to the plaintiff and convenience to the court system. Asbestos victims do not know at the time of exposure, and may not know for up to 40 years, that they have been injured or may contract a disease. *Bernier*, 516 A.2d at 542. Nor can a court conclude, from the plaintiff's contact with the harm-causing product alone, whether and when physical injury may occur. Thus, accrual is delayed until the physical illness manifests itself.

There is no such mystery here. Immediately after Plaintiff completed his dive on May 11, 1982, he sought treatment at Defendant's on-site clinic for respiratory distress. He was diagnosed as having inhalation pneumonitis, and was hospitalized for eight days. Unlike victims of asbestos inhalation, he knew from the time he entered the hospital on the day of the dive that he had been injured, and that the injury resulted from substances he inhaled while diving in Defendant's run-off tank. The fact that it took another four years for him to ascertain the exact scope of his injuries does not change this truth.

■ The Court finds, therefore, that a discovery rule of accrual is not warranted here. Unlike potential plaintiffs in cases where the discovery rule has been adopted, Plaintiff here had notice of his injuries immediately after his exposure to the hazardous substance. Because the exposure allegedly resulted from Defendant's tort, Plaintiff suffered a judicially recognizable injury on the day of the dive. His right to seek recovery for that injury was not preju-

diced by his inability to determine the exact scope of his injuries.

■ Plaintiff's cause of action thus accrued on May 11, 1982, the day of the dive. Because Plaintiff was not married to Phyllis Kelleher on that date, his injuries did not result, and could not have resulted, in legally cognizable harm to his future wife. Phyllis Kelleher's claims for loss of marital consortium thus fail under the rule of *Sawyer v. Bailey*, 413 A.2d at 168 (loss of consortium must, as a social public policy, be limited to the factual status of husband and wife existing at the time of the occurrence of the tortious conduct).

## B. Parental Consortium

■ The Maine Law Court has expressly declined to recognize an independent cause of action for loss of parental consortium incurred by a third party's negligent injury to a child's parent. *Durepo v. Fishman*, 533 A.2d 264 (Me.1987); *Corbeau v. Morse*, 533 A.2d 269 (Me.1987). The Law Court left to the state Legislature the task of determining whether such a cause of action should be acknowledged in Maine. This Court likewise declines to recognize the cause of action until the state legislature or the state court system has officially sanctioned it.

This decision prohibits Plaintiff's minor children from recovering against Defendant in this case under Maine law. Plaintiff claims, however, that Massachusetts law, not Maine law, governs the children's claims. He claims that because both the children and their parents are Massachusetts residents, and the children allegedly suffered their loss of parental consortium injuries there, Massachusetts has the most significant contacts with the children's claims. *Adams v. Buffalo Forge Co.*, 443 A.2d 932 (Me.1982) (law of state in which injuries occurred governs unless, with respect to a particular claim, another state has more significant contacts.) Massachusetts law recognizes a cause of action for loss of parental consortium. *Ferriter v.*

---

1. *See,* e.g., *Box v. Walker,* 453 A.2d 1181 (Me. 1983) (unsuccessful sterilization procedure); *Myrick v. James,* 444 A.2d 987 (Me.1982) (for- eign object surgical malpractice); *Anderson v. Neal,* 428 A.2d 1189 (Me.1981) (negligent title search by attorney).

*Daniel O'Connell's Sons, Inc.,* 413 N.E.2d 690 (Mass.1980).

The Court finds it does not have to reach the issue of applicable law. Even under Massachusetts law, Plaintiff's children could not recover, for the same reasons their mother could not recover; the relationship upon which their action is based did not exist when Plaintiff was injured by Defendant's allegedly negligent conduct, and therefore the children suffered no judicially cognizable injury.

The action for loss of parental society recognized in Massachusetts springs from the child's legal entitlement to his or her parent's society, and can only give rise to recovery if a child can prove economic and emotional dependence upon the injured parent. *Ferriter,* 413 N.E.2d at 696. The cause of action is designed to recompense injury to a relationship. *Id.*

This Court has found that Plaintiff's cause of action in tort accrued—that the legally cognizable injury occurred—on May 11, 1982, the day of the dive. Neither of Plaintiff's children were born at that time. Thus, no parent-child relationship existed, and neither child was, nor could have been, injured.

Plaintiff claims that the children were independently injured when Plaintiff was diagnosed as having dive-related illnesses after the children were born. Again, however, the Court has determined that Plaintiff's injury from Defendant's allegedly negligent conduct occurred on May 11, 1982. The illnesses appearing thereafter were mere manifestations of that initial injury, not new, discrete, compensable injuries. Therefore, no legally cognizable injury, separate from the initial injury of May 11, 1982, occurred after the parent-child relationship had been formed.

The children's actions are thus barred, regardless of the applicable law, because they were not born at the time the judicially cognizable injury to their father, the Plaintiff, occurred.

### V. Order

Accordingly, the Court ORDERS that Defendant's Motion to Dismiss Counts II, III, IV, VI, VII, VIII, X, XI, XII, XIV, XV and XVI of the Complaint be, and it is hereby, GRANTED.

So ORDERED.