Teresa SCHROEDER and Warren Schroeder, husband and wife, Plaintiffs,

v.

**BOEING COMMERCIAL AIRPLANE COMPANY, A DIVISION OF the BOEING CORPORATION, Defendant.**

Civ. A. No. 87–1220.

United States District Court, D. New Jersey.

Dec. 20, 1988.

---

Greitzer & Locks by James J. Pettit, Cherry Hill, N.J., for plaintiffs.

Davis, Reberkenny & Abramowitz, P.A. by Harry A. Horwitz, Cherry Hill, N.J., for defendant.

## OPINION

COHEN, Senior District Judge:

This case comes to us on review from a decision by the Honorable Jerome B. Simandle, United States Magistrate, ordering certain fee limits for depositions taken by defendant, Boeing Commercial Airplane Company ("Boeing"), of five of plaintiff Teresa Schroeder's treating physicians (as experts) and one of the experts retained for trial. Judge Simandle set the fees at what he believed to be a reasonable rate, pursuant to Fed.R.Civ.P. 26(b)(4), with the result that Boeing paid a certain amount per hour for each of the witnesses and plaintiffs were left to pay for that part of the fee charged in excess of what Boeing was charged. For the reasons set forth below, we affirm Judge Simandle's opinion.

### I. *Factual Background*

Plaintiff, Teresa Schroeder, is a former Eastern Airlines flight attendant. She served Eastern from 1973 to 1985. She claims she was significantly injured by design defects in a Boeing 757 in which she was working on July 15, 1985 when thrown into a cabinet in the aft galley complex by turbulence. The alleged design defects include the cabinet, the manner in which the cabinet was installed and the overall design of the aft galley complex. Plaintiff alleges she is totally and permanently disabled as a result of her psychiatric and orthopedic/neurologic injuries sustained when her shoulder came into contact with said cabinet. She has been diagnosed as suffering from severe TMJ dysfunction [1] and claims severe continuing incurable pain and suffering. Furthermore, as a result of the incident, plaintiff alleges irreparable impairment of her marital relations. To date, the medical bills are represented to constitute $33,903.88 and wage and benefits loss due to injury are believed by plaintiff to reach $994,166.00. Finally, plaintiff Warren Schroeder claims household service losses of $430,463.00 for loss of his wife's marital relations, support, services, society, comfort and advice.

Boeing defends on claims that much of plaintiff's medical problems pre-dated the injury sustained in the Boeing 757, that the cabinet was not defectively designed or installed, and in the alternative, that Teresa Schroeder assumed a known risk. Defendant also raises a state of the art defense and interposes the negligence of Eastern Airlines for the failure of the pilot to warn in advance of the upcoming turbulence which is alleged to have caused the accident.

---

**1.** The Temporomandibular Joint can be injured by trauma and dislocation. Teresa Schroeder allegedly suffers from trauma induced TMJ dysfunction which is defined as: "Chronic, painless limitation of movement ... [which] [w]hen associated with condylar growth arrest or tissue loss, [usually results in] facial asymmetry." R. Berkow, M.D., *The Merck Manual of Diagnosis and Therapy*, § 20, Ch. 243 at 2106–2107 (14th Ed.1982).

We expressly decline determining the validity of plaintiff's claim of injury at this time. We merely set forth an explanation of the alleged injury for greater clarity.

## II. *Procedural History*

At the outset, we must note that this case has been the center of zealous advocacy from both sides, which has resulted in a greater proliferation of motions and papers than are truly necessary to do justice in this case. This appeal is an example of how counsel have stretched this relatively simple case to the limits and of the advocacy which has sent this case spinning into the current procedural morass it now wallows in.

Initially, plaintiffs provided a list of treating physicians to defendant with the extraordinary number of eighteen of these treating physicians also listed as potential expert witnesses.[2] Defendant was furnished the treatment notes and medical records of these treating physicians, but no expert reports or other indication of what specifically each "expert" would testify as to at trial. In order to fully prepare for trial, defendant noticed each of the experts for depositions because plaintiffs were:

[l]ess than forthcoming with significant expert reports containing Rule 26(b)(4)(A)(i) information from each expert, including the opinions which the medical provider intends to offer at trial and the facts on which it is based. In most instances, plaintiff has provided merely copies of treatment notes or other medical records, generated by these providers, but not prepared specifically for the litigation and for each [of the six] expert's proposed testimony.

    *     *     *     *     *     *

[A]s a whole, it clearly appears that defendant has established good cause for obtaining further elaboration from these experts by depositions in this substantial case.

Slip. op. at 2–3 (Simandle, J., September 19, 1988).

**2.** Judge Simandle issued a preliminary Guideline on June 17, 1988 which set the fee structure for six of the eighteen experts, which were before him at that time. The other twelve experts have been deposed and the fee structure for those twelve was the product of an agreement between the parties.

**3.** As we understand Judge Simandle's opinion, the minimum floor payment is the minimum amount Boeing must pay in order to take the

After defendant noticed these six experts, plaintiffs submitted the proposed fees to be charged to defendant for the taking of the depositions. Dr. Romy indicated to plaintiffs that he would charge a $2,200 flat fee for his deposition; Dr. Mandel indicated a charge of $1,500 for his deposition; Dr. Myers indicated a $1,500 charge for the first two hours and $1,000 for each additional hour; Dr. Zaslow indicated a $1,200 flat fee; Dr. Gottehier indicated $750 per hour; and Dr. Staller indicated a flat fee of $1,000 for up to four hours. Defendant contested these fees, claiming they were unreasonable.

Judge Simandle then intervened in this heightening battle by setting what he felt were reasonable fees to be charged against Boeing for the expert depositions, leaving any excess charged by the experts to be absorbed by plaintiffs. Judge Simandle found that while:

these rules do not give a court the authority to actually regulate the amount of a fee charged by an expert witness to the party who retains the expert [,] ... [i]t remains a fact of life in litigation that physicians and others involved in treatment and care of an injured plaintiff can charge their patient essentially any fee (with[in] the bounds of medical ethics, perhaps) for giving expert testimony in litigation, and the plaintiff largely bears the burden of an unreasonable fee if the witness is unwilling to waive the excessive fee charged.

Slip op. at 4 (Simandle, J., September 19, 1988).

In his Opinion and Order of September 19, 1988, Judge Simandle set the "reasonable" rates as follows: $300 per hour for the neurologists (Drs. Romy, Mandel and Myers), with a minimum floor payment[3] by Boeing of $1,000 per deposition; $200 per

deposition, regardless of whether the number of hours of the deposition multiplied by the rate set out above exceeds or is lower than the minimum payment. Thus, taking the neurologists as an example, Boeing must pay at least $1,000 for each deposition, even if the total time spent in preparation and in testimony is less than three and one-half hours for each.

hour for the osteopath Dr. Zaslow, with a minimum floor of $800; $200 per hour for the dentist Dr. Gottehier, with a minimum floor of $750; and $150 per hour for the economist Dr. Jerome Staller, with a minimum floor of $600. Plaintiffs now appeal that decision to us.

### III. *Review of the Magistrate's Opinion*

We have appellate review over the Magistrate's Opinion and Order pursuant to 28 U.S.C. § 636(b)(1)(A), Fed.R.Civ.P. 72(a) and Rule 40(A) of the Local Rules of the United States District Court for the District of New Jersey. The Magistrate's Opinion and Order is reviewed under the "clearly erroneous or contrary to law" standard as set forth in 28 U.S.C. § 636 because this is a non-dispositive decision, not a finding and recommendation. *Cippollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir.1986), *cert. denied*, 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987); *see also Environmental Tectonics v. W.S. Kirpatrick & Co.*, 659 F.Supp. 1381, 1398–1402 (D.N.J.1987); *compare Sperling v. Hoffman–La Roche, Inc.*, 118 F.R.D. 392, 395 (D.N.J.1988) (the district court made *de novo* plenary review over findings of law and recommendation thereon).

Under the "clearly erroneous" standard, we believe that in the absence of clearly defined parameters, a Magistrate has wide discretion to make interstitial rulings of law in the interests of justice and fairness, provided that the Magistrate's opinion is based on clearly articulated principles. Judge Simandle's decision here was based on the clearly articulated principle provided by Fed.R.Civ.P. 26(b)(4)(C) that he was bound to impose a reasonable fee, and conversely could not impose an unreasonable fee. It is our opinion that Judge Simandle properly filled a gap in the law by applying that clearly articulated principle in a just and fair manner to the facts before him. Starting with the New Jersey state law benchmark of $150 per hour as a reasonable rate, Judge Simandle set the fees to be borne by Boeing at a higher rate for five of the six expert's depositions.[4] Furthermore, Judge Simandle set a minimum floor for each expert that Boeing would have to pay regardless of whether the numerical hours multiplied by the hourly rate exceeded or was less than the floor amount.

Finally, we must comment that to a great extent, plaintiffs have brought this house of cards down upon themselves by first electing to characterize eighteen treating physicians as experts rather than as the fact witnesses which they more likely are, and then not meeting the requirements of Fed.R.Civ.P. 26(b)(4)(A)(i). Defendant previously made a Motion to Limit Number of Expert Witnesses arguing that a physician who testifies as to opinions obtained or developed during the course of treatment should be considered a fact witness rather than expert, citing *Brandstetter v. National Railroad Passenger Corp.*, 7 Fed.R. Serv.3d 1219, 1221–22 (D.D.C.1987) [1987 WL 12766] and *Sipes v. United States*, 111 F.R.D. 59, 61 (S.D.Cal.1986). Although we might be inclined to agree with Boeing's position were the issue before us, the Magistrate denied Boeing's motion and it was not appealed. We therefore express no opinion.

By denying the motion however, the Magistrate left plaintiffs accountable for the production of meaningful trial preparation discovery or expert reports in compliance with Fed.R.Civ.P. 26 for its eighteen (later reduced to six by Judge Simandle's June 17, 1988 Preliminary Guidelines Order) "experts." Plaintiffs' second blow to their own foundation of precariously placed cards was their failure to timely comply with Fed.R.Civ.P. 26(b)(4)(A)(i) and provide such information in order to facilitate trial preparation. Plaintiffs' failure to so do is what led to defendant's request for depositions, which ultimately resulted in this appeal. Thus the Court is less than sympa-

---

4. The ruling by Judge Simandle that differentiated the economist from the treating physicians and thus set the lower rate of $150 for the economist is also not "clearly erroneous". It is clear to us from both Judge Simandle's opinion and other papers filed in this case that the economist, Dr. Staller, was retained in anticipation of litigation and is thus not entitled to more than the prevailing reasonable expert fee, which in this Court is $150 per hour.

thetic to plaintiffs' characterizations of Boeing's defense tactics as "absurdly overzealous" and "outlandishly expensive 'overkill' discovery"; in short, the Court does not think Boeing is acting as much like the "Evil Empire" as plaintiff would have us believe.

Plaintiffs have further aggravated the situation by attempting to categorize these treating physicians first as experts to the Magistrate, and then as non-experts and thereby not subject to Fed.R.Civ.P. 26(b)(4)(A)(i) in their papers on appeal to this Court. This schizophrenic presentation is not persuasive on the issue of whether Judge Simandle's ruling was clearly erroneous. In a prior motion before Judge Simandle Plaintiffs strove to have the treating physicians deemed experts; we feel that plaintiffs should now be estopped from arguing otherwise concerning the setting of fees.

### IV. *Conclusion*

We find no clear error in Judge Simandle's opinion of September 19, 1988 and therefore affirm. An appropriate Order will be entered.