Teresa SCHROEDER and Warren
Schroeder, husband and
wife, Plaintiffs,

v.

BOEING COMMERCIAL AIRPLANE
COMPANY, A DIVISION OF THE
BOEING CORPORATION, Defendant.

Civ. A. No. 87–1220.

United States District Court,
D. New Jersey.

May 5, 1989.

Greitzer & Locks, Cherry Hill, N.J. by James J. Pettit, for plaintiffs.

Davis, Reberkenny & Abramowitz, P.A., Cherry Hill, N.J. by Harry A. Horwitz, for defendant.

## OPINION

COHEN, Senior District Judge:

The defendant, Boeing Commercial Airline Co. ("Boeing"), has filed several *in limine* motions to allow us to clarify various aspects of the case before this action proceeds to trial. We limit this discussion to the resolution of whether we should exclude all evidence pertaining to plaintiff Warren Schroeder's *per quod* claim at trial. While there is little difference in the end result, we believe this motion is more properly approached as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Since we are sitting in diversity, pursuant to 28 U.S.C. § 1332, we are bound to apply the law of the state in which we sit. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We therefore look to New Jersey law for disposition of this matter. We believe New Jersey law bars outright, for the reasons set forth fully below, plaintiff Warren Schroeder's cause of action for consortium.

## I. FACTUAL HISTORY

Since we have previously set forth a comprehensive discussion of the general factual background in this case, *Schroeder v. Boeing Commercial Airplane Co.*, 123 F.R.D. 166, 167 (D.N.J.1988), we will try to emphasize more specifically the facts necessary for today's determination, leaving the reader to refer to our prior opinion for the overall background. To summarize, Teresa Schroeder is a former Eastern Airlines flight attendant who claims to have been severely injured by design defects in a Boeing 757 in which she was working on July 15, 1985. At that time, Teresa Schroeder was engaged to be married to her present husband and co-plaintiff, Warren Schroeder, but it is not in controversy that they had not yet been married.

Apparently the plaintiffs were engaged some time during the end of April or beginning of May of 1985. *See* Deposition of Warren Schroeder at 22. In June of 1985, Warren Schroeder left his residence in Nicaragua and left his job as a headwaiter on a cruise ship for Cunard Lines and began residing in Pennsauken, New Jersey with his then fiancee, Teresa Schroeder. *See* W. Schroeder deposition at 16. Teresa Schroe-

der avers that she and Warren were originally scheduled to be married prior to July 15, 1985 (the date of the accident), however, the judge who was supposed to preside over the ceremony was unable to do so for personal reasons. *See* Affidavit of Teresa Schroeder of Jan. 23, 1989 at 1.

Defendant expresses disbelief of plaintiff's affidavit and offers an Application For Marriage License purported to have been filed at a date unknown with the New Jersey State Department of Health which lists the intended date of marriage as July 23, 1985. As further evidence that there was no intention on plaintiffs' part to be married before July 15, 1985, defendant also submits the Certificate of Marriage and Marriage License dated July 1, 1985 which likewise indicates the date of marriage as July 23, 1985. Finally, we note that we have nothing in the way of testimony from the Honorable Joseph W. Zampino, Merchantville Municipal Court Judge, who was supposed to perform the ceremony, that it was to take place prior to July 15, 1985. Nor does it make any difference that plaintiffs had planned to get married prior to July 15, 1985. It is only significant, we think, that they were in fact married on July 23, 1985, in a civil ceremony, *See* T. Schroeder Aff. at 2, and that therefore, plaintiffs were not married as that term is defined at the time Teresa Schroeder's accident occurred.

## II. THE LAW OF CONSORTIUM IN NEW JERSEY

As previously noted, we are bound to apply New Jersey law in this diversity action. *Erie, supra.* The Supreme Court of New Jersey has decided the precise question before us on all fours in *Mead v. Baum,* 76 N.J.L. 337, 69 A. 962 (1908). The question is whether a married man can maintain a cause of action for loss of consortium, derivative of his spouse's claim for injury, when his spouse was injured while the two were engaged to be married, but had not yet been married. The answer in *Mead* is clearly and unequivocally "No". The lower New Jersey courts have consistently followed *Mead*[1] and found no cause of action, except for one aberration, *Stahl v. Nugent,* 212 N.J.Super. 340, 514 A.2d 1367 (Law Div.1986). In *Stahl,* the Court apparently found repugnant the rationale upon which the Supreme Court of New Jersey relied in making its decision in *Mead,* stating that:

> The theory in *Mead* is that a groom takes his bride "as he finds her," likening the claim to that of a man who hires an injured employee and then seeks damages from the tortfeasor for the inability of the employee to function fully.
>
> To parallel a married man whose wife's injury causes him a loss of her consortium with a hiring boss who takes his laborer as he finds him should have been seen as callous in 1908 as in 1986.

*Stahl, supra* 212 N.J.Super. at 341, 514 A.2d at 1368.

Rejecting *Mead,* the court in *Stahl* then concluded that since the plaintiffs were engaged to be married at the time of injury, and did in fact subsequently marry shortly after the accident, the husband could maintain a cause of action for loss of consortium sustained from the date of marriage. *Mead,* however, remains the controlling law in New Jersey, and *Stahl* has been criticized by subsequent Law Division cases examining the same issue. In *Sykes* the court stated:

> From an analytical standpoint, moreover, *Stahl* may not accurately represent the current state of New Jersey law. While the *Stahl* court focused its departure from precedent in an attack on *Childers v. Shannon, supra,* [183 N.J.Super. 591, 444 A.2d 1141] the court made no appar-

---

1. *See, e.g., Sykes v. Zook Enterprises, Inc.,* 215 N.J.Super. 461, 465, 521 A.2d 1380 (Law Div. 1987) *aff'd sub. nom. Sykes v. Propane Power Corp.,* 224 N.J.Super. 686, 541 A.2d 271 (App. Div.1988) ("In New Jersey, a claim for loss of consortium must be founded upon a marriage relation."); *Leonardis v. Morton Chemical Co.,* 184 N.J.Super. 10, 11, 445 A.2d 45 (App.Div. 1982) ("The right of recovery for loss of consortium resulting to a wife by reason of an injury to her husband, is founded upon the marriage relation. Absent such a relationship, the right does not exist, and thus no recovery may be had for loss thereof [citations omitted]."); *Childers v. Shannon,* 183 N.J.Super. 591, 595, 444 A.2d 1141 (Law Div.1982).

ent reference to the Appellate Division's long-standing precedent in *Leonardis v. Morton Chemical Co., supra,* [184 N.J. Super. 10, 445 A.2d 45 (App.Div.1982)]. The *Stahl* decision offers no indication that *Leonardis* was ever considered in reaching a plainly novel result.

*Sykes, supra,* 215 N.J.Super. at 465–66, 521 A.2d 1380.

The *Sykes* Court also modernized the rationale behind the *Mead* opinion, relying on the Appellate Division's reasoning in *Leonardis,* that the formal marriage relation forms the necessary touchstone to determine the strength of commitment between the two individuals which gives rise to the existence of consortium between them in the first instance. In both *Leonardis* and *Sykes* the court refused to extend a status to the non-injured unmarried cohabitant because to do so would elevate that person to a higher status than what that person had lawfully asserted.

Given the Supreme Court opinion in *Mead,* the recent appellate decision in *Leonardis,* and the criticism of *Stahl* in *Sykes,* which was affirmed *sub nom. Sykes v. Propane Power Corp.,* 224 N.J.Super. 686, 541 A.2d 271 (App.Div.1988), we are disinclined to agree with *Bulloch v. United States,* 487 F.Supp. 1078, 1079 (D.N.J.1980) where the Court found the question of whether proof of a legal marriage is a prerequisite for consortium claim to be a novel one. The Court in *Bulloch* apparently was unaware of the *Mead* case, however, after reading both *Mead* and *Bulloch,* it is clear that *Mead* is squarely on all fours with this case, and the novel approach of *Bulloch* is not reflective of New Jersey law.

Furthermore, our exhaustive research of this question has revealed that *Mead* and *Leonardis* are reflective of the majority view opinion of the States who have spoken on this subject. Most recently the Appellate Term of the New York Supreme Court stated:

> Moreover, damages for loss of consortium are not recoverable where, as here, the alleged wrongful conduct preceded the marriage, *Briggs v. Butterfield Memorial Hospital,* 104 A.D.2d 626, 479 N.Y.S.2d 758 [App.Div. Dept. 2 1984]. In this context, we are not persuaded that the actual effective date of discharge, which was subsequent to the marriage, is controlling, since the underlying allegations were based, in part, upon the pre-wedding notification.

*Mehtani v. New York Life Ins. Co.,* 145 A.D.2d 90, 537 N.Y.S.2d 800, 804 (App.Div. Dept. 1 1989).[2]

Similarly the Delaware Supreme Court held:

> A cause of action for loss of consortium is predicated on the proof of three elements: (1) that the party asserting the cause of action was married to the person who suffered a physical injury at the time the physical injury occurred, (2) that, as a result of the physical injury, the other spouse was deprived of some benefit which formerly existed in the

---

**2.** In *Briggs v. Butterfield Mem. Hosp.,* 104 A.D.2d 626, 479 N.Y.S.2d 758 (App.Div. Dept. 2 1984) the Court held, at 758–59:

> An action for loss of consortium cannot be maintained unless the plaintiff was married to the injured person at the time of the actionable conduct. We note that in virtually every jurisdiction of the United States, lawful marriage at the time the claim arises is a prerequisite to recovery for loss of services [citations omitted].

We have found only five cases where a lawful marriage was not required: 1) *Bulloch* which we expressly refuse to follow and which was specially rejected by *Leonardis* and *Childers;* 2) *Stahl,* which was rejected by *Sykes;* 3) *Sutherland v. Auch Inter–Borough Transit Co.,* 366 F.Supp. 127 (E.D.Pa.1973), which has been sub-sequently rejected by the Pennsylvania Courts, *see Akers v. Martin,* 14 Pa.D. & C.3d 325, 328 (Com.Pl.1980); *Rockwell v. Liston,* 71 Pa.D. & C.2d 756 (Com.Pl.1975) as well as later district courts, *see Curry v. Caterpillar Tractor Co.,* 577 F.Supp. 991, 992–94 (E.D.Pa.1984); 4) *Mattison v. Kirk,* 497 So.2d 120 (Ala.1986), where the Court held that a claim for loss of consortium could be based on common-law marriage, a factual situation distinguishable here because New Jersey does not recognize common-law marriage as a legal form of marriage. *See* N.J. S.A. 37:1–10; *Lopez v. Lopez,* 102 N.J.Super. 253, 255, 245 A.2d 771 (Ch.Div.1968); and 5) *Butcher v. Superior Court,* 139 Cal.App.3d 58, 188 Cal. Rptr. 503 (1983), which was specifically overruled in *Elden v. Sheldon,* 46 Cal.3d 267, 1003A, 250 Cal.Rptr. 254, 262, 758 P.2d 582 (1988).

marriage and (3) that the injured spouse has a valid cause of action for recovery against the tortfeasor.

*Jones v. Elliott*, 551 A.2d 62, 63–64 (Del. 1988). Likewise, the Supreme Court of Massachusetts, *see Feliciano v. Rosemar Silver Co.*, 401 Mass. 141, 514 N.E.2d 1095 (1987) (where the court refused to grant recovery for loss of consortium where the plaintiffs were not married but lived together; no right to recovery arose because the plaintiffs had not accepted the correlative responsibilities of marriage).

The basic principle that a spouse cannot recover for loss of consortium damages as a result of injuries to his or her spouse, although engaged to be married, because there existed no legal marital relationship between husband and wife at the time of injury, is oft stated to bar both husbands and wives from recovery. *See* husbands: *Sawyer v. Bailey*, 413 A.2d 165, (Maine 1980); *Sostock v. Reiss*, 92 Ill.App.3d 200, 47 Ill.Dec. 781, 415 N.E.2d 1094 (Ill.App. Dist. 1, Div. 5 1980); *Angelet v. Shivar*, 602 S.W.2d 185 (Kty.App.1980); wives: *Kelleher v. Boise Cascade Corp.*, 676 F.Supp. 22, 25 (D.Me.1988); *Tremblay v. Carter*, 390 So.2d 816 (Fla.Dist.Ct.App. 1980). The reasoning behind this rule has also often been made clear:

the rationale for this rule of law has been variously stated: a person should not be permitted to marry a cause of action, *Wagner v. International Harvester Company*, 455 F.Supp. 168 (D.Minn.1978); [citation omitted]; one takes a spouse in the then existing state of health and thus assumes the risk of any deprivation resulting from prior disability, *Rademacher v. Torbensen*, 257 A.D. 91, 13 N.Y.S.2d 124 (1939); on social policy grounds, liability at some point must be delimited, *Tong v. Jocson*, 76 Cal.App.3d 603, 142 Cal.Rptr. 726 (1977). We have no hesitance in expressing our agreement with these courts where the issue is the right to claim consortium where the tortious conduct *and fact of injury* were both known or knowable prior to marriage (emphasis in original).

*Stager v. Schneider*, 494 A.2d 1307, 1315–16 (D.C.App.1985). The delimitation of liability presents a compelling rationale upon which to base marriage as the touchstone for consortium. This point was well made by the Wisconsin Court of Appeals:

It is entirely possible that the fiancee of an injured person may suffer an actual loss of consortium. The concept of "consortium" includes love, companionship, society, sexual relations, support, services, and solace [citation omitted]. The question, however, is whether such a loss is compensable under Wisconsin law. The answer to that question is clear and unambiguous. Such losses are not compensable [citation omitted]. If a loss of consortium were to be extended to include unmarried individuals, the certainty of who is entitled to prosecute such a claim is destroyed [citation omitted]. Friends and relatives may also suffer a loss of society and companionship when an endeared one is injured. To compensate for such losses, however, would involve costs far beyond those society can afford. Public policy precludes broadening the scope of a consortium claim to encompass engaged individuals.

*Denil v. Integrity Mutual Ins. Co.*, 135 Wis.2d 373, 401 N.W.2d 13, 15 (Wis.Ct.App. 1986). *See also Lewis v. Hughes Helicopter, Inc.*, 193 Cal.App.3d 569, 205 Cal. App.3d 384, 220 Cal.Rptr. 615 (Cal.App. Dist. 3 1985) ("[C]ourts throughout the United States have refused to extend a cause of action for loss of consortium to unmarried cohabitants or engaged couples. Reasons for this viewpoint have most commonly been expressed in terms of public and social policy: liability must be somehow limited and marriage, an institution favored by society, provides a clear touchstone for such a purpose." *Id.* at 617.); *Childers, supra*, 183 N.J.Super. at 595, 444 A.2d 1141. *See also Norman v. Mass. Bay Trans. Auth.*, 403 Mass. 303, 529 N.E.2d 139, 140 (1988) (in denying a claim by parents for loss of injured child's consortium, the Court stated that "the possibility of recovery cannot wisely be extended to every relationship in which a loss of consortium has been sustained, we must draw a principled, defensible line between those

relationships to which a right of recovery should attach and those relationships with respect to which no such right should be recognized.")

A second rationale voiced by some courts underpinning this general rule is a lack of a cognizable right in an unmarried cohabitant or fiancee for consortium because such a right only attaches at marriage as part of the bundle of rights one acquires when he or she becomes validly married.[3] The Court in *Elden v. Sheldon*, 164 Cal. App.3d 745, 210 Cal.Rptr. 755, 757–58 (Ct. App. Dist. 2 Div. 2 1985), *aff'd* 46 Cal.3d 267, 1003A, 250 Cal.Rptr. 254, 758 P.2d 582 (1988) explained:

> [Modern law] presupposes that either party to a marriage is entitled to expect not only financial support or services from the other but also comfort, companionship and sexual relations. An injury to one spouse thus interferes with the other spouse's enjoyment of these benefits. Prior to marriage, however, neither party has a *legal* right to expect any such benefits from the other. Without marriage, an injury to one cohabitant does not interfere with a legally cognizable right of the other.
>
> \*    \*    \*    \*    \*    \*
>
> The law is concerned with protection of the "relational" interests of married persons ...

*Accord Grant v. Avis Rent A Car System, Inc.*, 158 Cal.App.3d 813, 204 Cal.Rptr. 869 (Ct.App. Dist. 2 Div. 1 1984); *Lieding v. Commercial Diving Center*, 143 Cal.App. 3d 72, 191 Cal.Rptr. 559 (Ct.App. Dist. 2 Div. 1 1983); *see also Gillespie–Linton v. Miles*, 58 Md.App. 484, 473 A.2d 947 (Md. Ct.Spec.App.) *cert. denied* 300 Md. 794, 481 A.2d 239 (1984).

A final basis for our determination is that:

> allowance of a cause of action in the circumstances of this case would impose a difficult burden on the courts. It would require a court to inquire into the relationship of the parties to determine whether the "emotional attachments of the family relationship" existed between the parties [citation omitted], and whether the relationship was "stable and significant."

*Elden v. Sheldon*, 46 Cal.3d 1003A, 250 Cal.Rptr. 254, 758 P.2d 582, 587 (1988). We are in no position to impose this slippery slope onto New Jersey law; in fact, the lower New Jersey Courts are in accord with *Elden* in rejecting such a "difficult burden." *See Childers, supra*, 183 N.J.Super. at 595, 444 A.2d 1141 ("Plaintiffs here were engaged to be married at the time of the accident; how long an engagement will support a claim? One month? One week? 'Going steady'? Or is cohabitation to be the test, as it apparently was in *Bulloch?* Again: For how long? Was there joint payment of rent? Grocery bills?").

Having conducted an exhaustive discussion of state cases and New Jersey State law, we believe that the New Jersey Supreme Court will reassert the generally accepted principle that a valid marriage is a prerequisite to establish a claim for loss of consortium. We therefore grant defendant's motion in the form of a Fed.R.Civ.P. 12(b)(6) request to dismiss for failure to state a claim. Plaintiff Warren Schroeder's claim for loss of consortium is dismissed in the appropriate order which follows.

### ORDER

This matter having come before the Court on an *in limine* motion by defendant, Boeing Commercial Airline Company, to exclude all evidence pertaining to plaintiff, Warren Schroeder's claim for loss of consortium; and

For the reasons set forth in the Court's opinion filed this day; and

For good cause shown;

---

**3.** This bundle of rights is often expressed at the time of the marriage by the traditional vows usually taken during the wedding ceremony, such as "Do you [husband] take [wife] as your lawful wedded wife to love, honor and cherish; to have and to hold, in sickness and in health, for richer and for poorer, until death do you part?"

It is on this 5th day of May, 1989 ORDERED that said motion be and the same is hereby GRANTED.