718 A.2d 1238 (1998)
315 N.J. Super. 467
Joel FRIEDMAN and Jihane Friedman, His Wife, Plaintiffs,
v.
Jay KLAZMER, D.O., Karen Scardigli, D.O., et al, Defendants
Superior Court of New Jersey, Law Division, Camden County.
Decided August 17, 1998.
Andrew Napoli, Philadelphia, PA, and Robert Pollan, Marlton, for plaintiff (Haymond and Lundy, Philadelphia, PA).
William G. Theroux, Morristown, for defendant Klazmer (Jackson & Buckley); Timothy P. O'Brien, Pleasantville, for defendant Scardigli, (Paarz, Master, Koernig, Crammer, O'Brien, Bishop & Horn).
FRATTO, J.S.C.
This is a case of first impression in New Jersey. This matter comes before the court on a motion in limine by defendants to strike plaintiff, Jihane Friedman's derivative claim for loss of consortium.

FACTS
Plaintiffs bring a claim for medical malpractice. Defendants allegedly violated their duty of care when neglecting to diagnose a tumor in Joel Friedman's spine while he was under their care and treatment. It is undisputed that Joel had a slow growing tumor on his thoracic spine known as a schwanoma.
Subsequent to his treatment by defendant doctors, Joel married his current wife, Jihane. After several months of marriage, during which he and his wife had a satisfactory sex life, Joel began to demonstrate various signs and symptoms of his illness, including frequent loss of erections and ultimately, impotency. Subsequent testing disclosed the previously undiagnosed tumor. It was also at this point that the Friedmans knew or became aware of a possible cause of action for medical malpractice. The issue before the court is whether or not a cause of action exists for loss of consortium where the alleged malpractice was committed before the marriage, but not discovered or reasonably discoverable until after the marriage.

LOSS OF CONSORTIUM CLAIMS
New Jersey has long recognized a spouse's derivative claim for loss of consortium when there is an underlying claim for negligence. For many years, loss of consortium law has been guided by Mead v. Baum, 76 N.J.L. 337, 69 A. 962 (Sup.Ct.1908). In Mead, the plaintiff's husband brought a derivative claim for loss of consortium when his wife was seriously injured during a firework display caused by the defendant's negligence. The injury occurred before their wedding day, but while the female plaintiff was under contract to marry the male plaintiff. Id. at 340, 69 A. 962.
The jury awarded the wife $1,500. for her injuries and the husband $500. for his injuries. The Supreme Court of New Jersey, however, overturned the jury's decision as a matter of law. In so doing, it established a legal principle in New Jersey that continues to this day. The court held that one must be *1239 married before an injury occurs in order to recover for loss of consortium. The rationale was that "the husband takes his wife as she is at the time of their marriage," and, therefore, has voluntarily assumed his wife's status and thus, has suffered no loss as her husband. Id. at 342, 69 A. 962.
The Mead standard for recovering loss of consortium damages was not seriously challenged for many years in New Jersey until the case of Bulloch v. United States, 487 F.Supp. 1078 (D.N.J.1980). In Bulloch, a loss of consortium claim was brought by Edith Bulloch, who cohabitated with the plaintiff, David Bulloch. The Defendants argued that a legal marriage was an essential element of a consortium claim, and moved for dismissal.
The federal court, applying New Jersey Law, as it thought the state courts would, held that the lack of a valid marriage did not, itself, preclude Edith Bulloch from recovering for loss of consortium. Id. at 1079. Judge Ackerman's opinion cited Kozlowski v. Kozlowski, 80 N.J. 378, 403 A.2d 902 (1979) as standing for the proposition that New Jersey will not penalize cohabitants for failure to marry. Bulloch at 1082. The opinion called into question the long standing New Jersey standard established by Mead that one must be married to recover for loss of consortium.
Subsequent state court decisions showed that the federal court was not truly standing in the shoes of the state courts. Two years after Bulloch, in Childers v. Shannon, 183 N.J.Super. 591, 444 A.2d 1141 (Law Div. 1982), the trial court refused to allow a husband to recover consortium damages for an injury to his wife which occurred two months prior to their marriage. In that case, the court refused to equate "fiancees and unmarried cohabitants with married couples." Id. at 593, 444 A.2d 1141. The court in Childers believed the marriage to be an essential element of consortium claims, stating "marriage is the only dependable means by which a relationshipmay be legally defined." Id. at 594, 444 A.2d 1141.
The Appellate Division agreed, in Leonardis v. Morton Chem. Co., 184 N.J.Super. 10, 445 A.2d 45, (App.Div.1982), that marriage is a required element for a consortium claim. Leonardis went further than Childers by specifically holding, "We find no merit in and decline to follow Bulloch v. U.S." Id. at 11, 445 A.2d 45.
Only one reported case in New Jersey has held that a husband has a cause of action for loss of consortium for injuries sustained by his wife prior to marriage where they were engaged at the time of the injury. Stahl v. Nugent, 212 N.J.Super. 340, 514 A.2d 1367 (Law Div.1986). The Stahl decision was strongly criticized the following year in another Law Division case, Sykes v. Zook Enter., Inc., 215 N.J.Super. 461, 521 A.2d 1380 (Law Div.1987). The trial court judge in Sykes pointed out that the Stahl decision offered no indication that Leonardis was ever considered in reaching "a clearly novel result". Sykes was affirmed sub nom. Sykes v. Propane Power Corp., 224 N.J.Super. 686, 541 A.2d 271 (App.Div.1988).
The federal court thereafter followed the Appellate Division in Schroeder v. Boeing, 712 F.Supp. 39 (D.N.J.1989). In Schroeder, the District Court dismissed a consortium claim filed by the plaintiff, who was engaged to marry the injured party. The court stated that "Bulloch is not reflective of New Jersey law" and held that the injury must come after marriage for a spouse to recover consortium damages. Id. at 41. The rationale was that "A person should not be permitted to marry a cause of action." Id. at 42 (citing Wagner v. International Harvester Co., 455 F.Supp. 168 (D.Minn.1978)).
No New Jersey case has, however, addressed the instant factual pattern where the injury is not discovered until after the marriage. This issue has, however, been addressed in Pennsylvania and in a federal decision in New York.
In the 1970's and 1980's, there was no uniformity with regard to the standards to be applied in Pennsylvania loss of consortium cases. In 1973, the Eastern District Court of Pennsylvania allowed a husband to collect loss of consortium damages, even though the injuries to his wife occurred one month prior to marriage. Sutherland v. Auch Inter-Borough Transit Co., 366 F.Supp. 127 (E.D.Pa. 1973). However, the same court reversed direction in 1984, as it pondered the question *1240 of whether Pennsylvania courts would recognize the right of an unmarried cohabitant to recover damages for a loss of consortium caused by injuries to the other cohabitating party. By answering in the negative, the opinion stated: "The Court predicts that the (Pennsylvania) Supreme Court would not permit such a cause of action." Curry v. Caterpillar Tractor Co. 577 F.Supp. 991, 992 (E.D.Pa.1984). The court in Curry proved to be prophetic, as subsequent state court opinions showed that marriage is a vital element in loss of consortium claims in Pennsylvania. See, e.g., Sprague v. Kaplan, 392 Pa.Super. 257, 572 A.2d 789 (1990).
The issue of a pre-marital negligent act, not discovered until after the marriage, was addressed in Pennsylvania in Vazquez v. Friedberg, 431 Pa.Super. 523, 637 A.2d 300 (1994). In Vazquez, a case directly on point with the case at hand, the defendant performed a hernia operation on the plaintiff in 1976 in which he lowered one of the plaintiff's testicles. In May of 1987, plaintiff got married. In 1989, a cancerous lump was discovered on the surgically lowered testicle. In 1991, the plaintiff filed an action against the doctor, claiming negligence, and adding a claim for loss of consortium. The defendant moved for summary judgment, claiming that since the injury occurred before the marriage, loss of consortium damages could not be recovered. The trial court agreed, and granted the defendant's motion.
In reversing the trial court, the Pennsylvania Superior Court established a "discovery rule" for loss of consortium claims, making it co-extensive with the statute of limitations for the underlying cause of action. Id. 637 A.2d at 301. The appellate court stated:
Here, there were no discernable physical symptoms, nor any functional impairment at the time the procedure had been performed. The negligent act, therefore, did not ripen into an injury until appellant contracted cancer. Moreover, as the cancer was not discovered until two years after Appellants had been married, Appellant, Holly Vasquez, was entitled to bring a claim for loss of consortium.

[Id. at 302.]
The plaintiff was allowed to proceed with a loss of consortium claim for a pre-marital tort because the injury was not discovered until after the marriage.
This "discovery rule" for loss of consortium claims was later affirmed by the Supreme Court of Pennsylvania in Cleveland v. Johns-Manville Corp., 547 Pa. 402, 690 A.2d 1146 (1997). The court held, as a matter of law, that "When the injury involves a hidden or latent disease, such as asbestosis, the injury occurs when the plaintiff discovers, or reasonably should have discovered, the injury." Id. 690 A.2d at 1149. While the plaintiff lost in Cleveland, as she knew about her husband's injury prior to marriage, the decision, in effect, would have allowed a plaintiff with no prior discovery of a pre-marital injury to recover loss of consortium damages for injuries detected after marriage.
The Federal District Court for the Southern District of New York also directly addressed the "Discovery Rule" in the context of a consortium claim in Walsh v. Armstrong World Indus., 700 F.Supp. 783 (S.D.N.Y. 1988). That court suggested that the New York courts should consider adopting such a rule:
A spouse who married a victim of toxic exposure after exposure, but during the latency of the disease, should perhaps be entitled to recover for loss of consortium. The "discovery rule," however, does not affect the principle that a spouse may not recover loss of consortium damages for injury that is manifest at the time of marriage.

[Id. at 785.]

ANALYSIS
The facts in the present case are distinguishable from prior reported New Jersey decisions. Those cases dealt with injuries that were discovered or reasonably discoverable prior to marriage. The instant case presents a novel issue to New Jersey Courts.
If this court was to mechanically apply the rule that a party must be married before an injury in order to recover loss of consortium damages, an inequitable result would occur. While it is true that one may not marry a cause of action, a more accurate statement is that one may not "knowingly" marry a cause of action. Stated another *1241 way, a spouse may proceed with a loss of consortium claim where the injury was suffered before marriage, so long as the injury was not discovered or reasonably discoverable by either spouse until after the marriage.
The United States District Court for New Jersey hinted at the adoption of this equitable standard in Schroeder, supra (712 F.Supp. 39), held that while "A person should not be permitted to marry a cause of action... We have no hesitance in expressing our agreement with these courts (in dismissing consortium claims) where the issue is the right to claim consortium where the tortious conduct and fact of injury were both known or knowable prior to marriage." Schroeder at 42. Impliedly, that court would permit a loss of consortium claim where the tortious conduct and fact of injury were not known or knowable prior to marriage.
In the current matter, there were no signs of the injury before the Friedmans were married. There were no physical manifestations of the undiagnosed tumor, and neither the husband nor the wife knew, or had reason to know, about the tumor.
Only after the marriage was the tumor and the potential malpractice claim discovered. The marital status of the Friedmans meets the criticism of Leonardis and Childers in that they have the necessary foundation of a "marriage relation" which is the touchstone of the consortium claim. A determination that the cause of action was not known or knowable by either of them prior to their marriage satisfies the concern of the Schroeder court and is in accord with the reasoning of the Pennsylvania courts and the Federal District Court for the Southern District of New York.

CONCLUSION
For the foregoing reasons, I therefore find that Jihane Friedman is entitled to bring her loss of consortium claim since neither she nor Joel Friedman knew, or had reason to know, of Joel's pre-marital tumor or potential malpractice claim which was not discovered until after their marriage.
Defendant's motion to strike plaintiff's derivative claim for loss of consortium is hereby DENIED.